STATE of Wisconsin, Plaintiff-Respondent,

v.

Alan J. ERNST, Defendant-Appellant.

Supreme Court

*No. 2003AP1728–CR. Oral argument November 12, 2004.
—Decided July 7, 2005.*

2005 WI 107

(Also reported in 699 N.W.2d 92.)

For the defendant-appellant there were briefs by *Jeffrey W. Jensen* and *Law Offices of Jeffrey W. Jensen,* Milwaukee, and oral argument by *Jeffrey W. Jensen.*

For the plaintiff-respondent the cause was argued by *Michael C. Sanders,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification from the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2001–02).[1] The defendant, Alan J. Ernst (Ernst), who has been charged with his fifth offense of operating a motor vehicle under the influence of alcohol, asks for review of a non-final order of the Fond du Lac County Circuit Court, which granted the State of Wisconsin's (State) request to hold

---

[1] Unless otherwise indicated all references to Wisconsin Statutes are to the 2001–02 edition.

Wisconsin Stat. § (Rule) 809.61 states, in relevant part: "The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion."

an evidentiary hearing, during which it will have the chance to question Ernst in an attempt to prove that Ernst's waiver of the right to counsel was valid and that he was competent to represent himself. The circuit court concluded that the record of Ernst's fourth conviction for operating under the influence of an intoxicant was deficient in two respects: 1) the difficulties and disadvantages of self-representation were not adequately explained; and 2) competency was not explicitly addressed. Thus, the circuit court, in effect, held that Ernst had made a prima facie showing that his waiver of counsel was not knowing, intelligent, and voluntary.

¶ 2. We conclude, first, based on our superintending and administrative authority, that the requirements this court imposed in *State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997), regarding waiver of counsel, survive the United States Supreme Court's decision in *Iowa v. Tovar,* 541 U.S. 77 (2004). Second, we hold that an alleged violation of the requirements of *Klessig* can form the basis of a collateral attack, as long as the defendant makes a prima facie showing, pointing to facts that demonstrate that he or she did not knowingly, intelligently, and voluntarily waive his or her constitutional right to counsel. Third, we conclude that when the defendant successfully makes a prima facie showing, the burden to prove that the defendant validly waived his or her right to counsel shifts to the State (State of Wisconsin). Fourth, we hold that the State may call and elicit testimony from the defendant at an evidentiary hearing in an attempt to meet its burden and, in turn, the defendant may not raise his or her Fifth Amendment privilege against testifying. Finally, we conclude that the defendant's refusal to testify under these circumstances allows a circuit court rea-

306

sonably to infer that the State has satisfied its burden of showing a knowing, intelligent, and voluntary waiver of the right to counsel.

I

¶ 3. The relevant facts are not in dispute. On August 10, 2002, the Fond du Lac County police stopped Ernst on suspicion that he was operating his vehicle while under the influence of an intoxicant (OWI). Ernst failed his field sobriety tests and was then placed under arrest. His blood-alcohol content was measured at 0.02.[2]

¶ 4. A Fond du Lac County Assistant District Attorney filed a two-count complaint against Ernst. He was charged with an OWI, pursuant to Wis. Stat. § 346.63(1)(a), and having a prohibited alcohol concentration under § 346.63(1)(b). Because Ernst had received four prior convictions for OWI, these crimes were charged as fifth offenses.

¶ 5. Before trial, Ernst filed a motion collaterally attacking his fourth OWI conviction for the purpose of reducing the penalty enhancement in the pending case. He alleged that his Sixth Amendment right to counsel[3]

---

[2] It should be noted that having at least three prior convictions for operating a vehicle under the influence of an intoxicant lowers the prohibited alcohol concentration of a driver from the usual 0.08 to 0.02. *See* Wis. Stat. § 340.01(46m)(c).

[3] The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by

had not been validly waived when he pled guilty to the previous OWI charge. Specifically, he claimed he "was not represented by counsel and the court did not take a knowing and voluntary waiver of counsel from the defendant or determine that the defendant was competent to represent himself."

¶ 6.   Following a motion hearing, the Fond du Lac County Circuit Court, Dale L. English, Judge, concluded that the record in Ernst's fourth OWI conviction, in regard to his waiver of counsel, was deficient because Ernst was not adequately instructed on the difficulties and disadvantages of proceeding pro se, and that competency was not explicitly addressed. The transcript from his plea and sentencing proceeding on February 26, 2002, in relevant part, sets forth the following:

> THE COURT:   Mr. Ernst, the Plea Questionnaire and Waiver of Rights form that I have received — is it your wish to proceed here today without counsel?
>
> THE DEFENDANT:   Yes, it is, Your Honor.
>
> THE COURT:   And do you feel that that's a decision that you have made of your own volition?
>
> THE DEFENDANT:   It was a hard decision, yes, it was. But, yes.
>
> THE COURT:   Okay. You understand the document that I have received? You've read through it?
>
> THE DEFENDANT:   Yes, sir, I have.
>
> THE COURT:   And this is your signature on the back side?

law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: And it's dated today's date?

THE DEFENDANT: Yes, it is.

THE COURT: The form indicates that you would be entering a no contest plea; that you do have a high school diploma; that you understand the English language; that you understand the charge to which you are pleading; that you are not currently receiving treatment for a mental illness or disorder; nor have you had any alcohol, medications, or drugs within the last 24 hours. Are all of those statements true and correct?

THE DEFENDANT: Yes, they are.

THE COURT: As it relates to your constitutional rights, you have put check marks in each of the boxes preceding each of the seven rights and concludes with a statement that you understand the rights that have been checked and that you are giving them up of your own free will. Is that also true and correct?

THE DEFENDANT: Yes, it is.

. . . .

The COURT: You understand the penalties that the Court could impose in this matter?

THE DEFENDANT: Yes, I do, Your Honor.

¶ 7. After the circuit court's ruling in regard to the fourth OWI conviction, the State promptly requested an evidentiary hearing to show that Ernst had knowingly, intelligently, and voluntarily waived his right to counsel in that case. The State also informed the court that it intended to call Ernst as a witness at this hearing. Ernst responded by announcing that he would assert his Fifth Amendment privilege against self-incrimination and would not testify if called as a witness.

¶ 8. After ordering the parties to submit briefs, the circuit court entered an order on June 17, 2003, which granted the State's request for an evidentiary hearing and allowed the State to question Ernst with respect to his previous waiver of counsel. The court reasoned that the State would never be able to meet its burden at such a hearing without being able to question the defendant and, that if unable to question him, the evidentiary hearing would become, in effect, meaningless. With respect to the Fifth Amendment privilege, the court held, first, "that it's disingenuous for a defendant to be able to raise a right to counsel issue . . . and then be insulated from having to testify about the very issues the defendant raises." The court also determined that Ernst could not incriminate himself with regard to the fourth OWI conviction, since he had been convicted on that charge previously. Subsequently, Ernst petitioned the court of appeals for interlocutory review of the circuit court's decision to grant an evidentiary hearing and to compel Ernst's testimony at the hearing. The court of appeals granted the petition and then certified the case to this court. We granted review and heard oral arguments on November 12, 2004.

¶ 9. On December 1, 2004, we ordered the parties to file supplemental briefs. We have considered all of the briefs, as well as the oral arguments, and now reverse the order of the circuit court, since we determine that a sufficient prima facie case has not been established. We remand the case for further proceedings consistent with this opinion, where Ernst would have the opportunity to file an affidavit and attempt to establish a prima facie case.

## II

¶ 10.   Whether a defendant knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel requires the application of constitutional principles to the facts. *See Klessig*, 211 Wis. 2d at 204; *see also State v. Woods,* 117 Wis. 2d 701, 715–16, 345 N.W.2d 457 (1984). We review such a question de novo, independently of the reasoning of the circuit court. *Klessig,* 211 Wis. 2d at 204. We benefit, however, from that court's analysis. Whether a party has met the burden of establishing a prima facie case presents a question of law which we review de novo. *See State v. Baker,* 169 Wis. 2d 49, 78, 485 N.W.2d 237 (1992).

¶ 11.   We also determine whether a defendant's Fifth Amendment privilege against compulsory incrimination may be violated. Such an analysis presents a question of law and, thus, is subject to de novo review. *See State v. Eastman,* 185 Wis. 2d 405, 410, 518 N.W.2d 257 (1994).

## III

¶ 12.   The first issue we address is whether the requirements this court imposed in *Klessig,* regarding waiver of counsel, survive the United States Supreme Court's recent decision in *Iowa v. Tovar.* Ernst and the State seem to agree that the *Klessig* requirements may be imposed as a procedural rule under the court's superintending and administrative authority over the Wisconsin court system and, thus, do not conflict with the Supreme Court's holding in *Tovar.*

¶ 13.   We first discussed the requirements necessary to effectuate a valid waiver of counsel in *Pickens v.*

*State,* 96 Wis. 2d 549, 292 N.W.2d 601 (1980). In that case, the defendant attempted to have his conviction overturned because the circuit court failed to conduct an adequate inquiry into his decision to proceed pro se. Specifically, the defendant argued that his waiver was not knowing and voluntary. The court concluded that the record made no showing of the defendant validly waiving his right to counsel:

> [I]n order for an accused's waiver of his right to counsel to be valid, the record must reflect not only his deliberate choice to proceed without counsel, but also his awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges he is facing and the general range of possible penalties that may be imposed if he is found guilty. Unless the record reveals the defendant's deliberate choice and his awareness of these facts, a knowing and voluntary waiver will not be found.

*Id.* at 563–64. Although the court held that this colloquy was the best way to accomplish a thorough examination of the defendant's waiver, it did not require that such colloquy occur in every case. *Id.*

¶ 14.    Next, in *Klessig,* we "overrule[d] *Pickens* to the extent that we mandate the use of a colloquy in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel." *Klessig,* 211 Wis. 2d at 206. Although *Klessig* also involved a defendant claiming an invalid waiver of counsel, the court prescribed a higher standard than previously applied in this state. Specifically, the court held:

> To prove such a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of

> the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him. If the circuit court fails to conduct such a colloquy, a reviewing court may not find, based on the record, that there was a valid waiver of counsel.

*Id.* (citation omitted). The court adopted such requirements in order to insure that the defendant validly waived his right to counsel and to preserve appellate resources by making the standard clear. *See id.*

¶ 15.   Most recently, in *Tovar,* the United States Supreme Court reviewed warnings which the Iowa Supreme Court had held essential to a "knowing and intelligent" waiver of the Sixth Amendment right to counsel. The specific warnings that the state required were as follows:

> (1) advise the defendant that "waiving the assistance of counsel in deciding whether to plead guilty [entails] the risk that a viable defense will be overlooked"; and (2) "admonis[h]" the defendant "that by waiving his right to an attorney he will lose the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty"?

*Tovar,* 541 U.S. at 81. In rejecting the argument that such warnings were required by the Sixth Amendment, the Supreme Court held that a valid waiver of the Sixth Amendment right to counsel did not require the particular language used by the Iowa courts. Instead, the Supreme Court held that "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Id.*

313

¶ 16. The Court emphasized that it has never "prescribed any formula or script to be read" when a defendant seeks to proceed pro se. *See id.* at 88. The central component for a valid waiver is simply that the defendant " 'knows what he is doing and his choice is made with his eyes open.' " *Id.* at 89 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279 (1942)). Such information "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* at 88 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

¶ 17. With these above principles in mind, the United States Supreme Court rejected some of the admonitions that were required by the Iowa Supreme Court, which had justified such requirements on Sixth Amendment grounds. The Supreme Court carefully framed its holding to allow states to continue adopting procedural rules to guide the waiver of counsel procedure. Specifically, the court held: "We note, finally, that States are free to adopt by statute, rule, or decision any guides to the acceptance of an uncounseled plea they deem useful." *Id.* at 94 (citations omitted).

¶ 18. We recognize the Supreme Court's decision in *Tovar.* We conclude, however, that the *Klessig* requirements are not based on the Sixth Amendment and, thus, do not conflict with the Supreme Court's holding. We do not conclude that the *Klessig* requirements are dictated by Article I, Section 7 of the Wisconsin Constitution.[4] In *Klessig,* we never suggested

---

[4] Article I, Section 7 of the Wisconsin Constitution provides, in relevant part: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel. . . ."

that the colloquy requirements were based on either the United States Constitution or Article I, Section 7 of our State Constitution. Instead, we made it clear that the requirements were a court-made procedural rule. Specifically, this court used its superintending and administrative authority to "mandate" the use of a colloquy in cases involving a defendant's waiver of the right to counsel, in order to serve "the dual purposes of ensuring that a defendant is not deprived of his constitutional rights and of efficiently guarding our scarce judicial resources." *Klessig,* 211 Wis. 2d at 206.

■■■■

¶ 19.    Superintending and administrative authority allows courts to formulate "procedural rules not specifically required by the Constitution or the [Legislature]." *United States v. Hasting,* 461 U.S. 499, 505 (1983). Such rules are designed to implement a remedy for a violation of recognized rights. *See id.* In Wisconsin, our authority to supervise the courts and issue procedural rules is found in Article VII of the Wisconsin Constitution. Article VII, Section 3 provides us with "superintending and administrative authority over all courts." This clause constitutes a grant of power "that is indefinite in character, unsupplied with means and instrumentalities, and limited only by the necessities of justice." *Arneson v. Jezwinski,* 206 Wis. 2d 217, 225, 556 N.W.2d 721 (1996) (citations omitted).

---

Article VII, Section 3 of the Wisconsin Constitution states, in relevant part: "The supreme court shall have superintending and administrative authority over all courts."

In *State v. Hansford,* 219 Wis. 2d 226, 580 N.W.2d 171 (1998), we stated: We recognize that the Wisconsin Constitution may afford greater protection than the United States Constitution." *Id.* at 242; *see also Iowa v. Tovar,* 541 U.S. 77, 94 (2004).

¶ 20. The justification for the superintending and administrative authority this court utilized in *Klessig* is similar to that which we invoked in *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). In that case, we held that a circuit court must follow prescribed methods for determining the defendant's understanding of the nature of a charge. In so holding, we concluded that, under the United States Constitution, no particular procedure is mandated for a circuit court's acceptance of a no contest or guilty plea. Instead, we made "mandatory" that, as a procedural requirement, in order to assist the circuit court in making the constitutionally required determination that a defendant's plea is voluntary, a circuit court must undertake a personal colloquy with the defendant. The purpose of the colloquy is to ascertain his or her understanding of the nature of the charge, prior to the court's acceptance of a guilty or no contest plea, pursuant to Wis. Stat. § 971.08(1). *See State v. Livingston,* 159 Wis. 2d 561, 572, 464 N.W.2d 839 (1991). We based the sources of the required duties of the circuit court on the statute and on our "superintending and administrative authority over the circuit courts. . . ." *Bangert,* 131 Wis. 2d at 267 (footnote omitted).

¶ 21. Similarly, in *Klessig,* we required a circuit court to undertake a colloquy, even though such an action was not constitutionally required. We conclude that the *Klessig* colloquy requirement was and is a valid use of the court's superintending and administrative authority, just as it was in *Bangert,* and that such a rule does not conflict in any way with the United States Supreme Court's decision in *Tovar,* but rather receives endorsement from the Supreme Court's language in that decision.

316

¶ 22. We next address whether the violation of the *Klessig* requirements can form the basis for a collateral attack.[5] In *State v. Hahn,* 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528, we firmly established that "[i]n an enhanced sentence proceeding predicated on a prior conviction, the U.S. Constitution requires a trial court to consider an offender's allegations that the prior conviction is invalid only when the challenge to the prior conviction is based on the denial of the offender's constitutional right to a lawyer." *Id.,* ¶ 17. Consequently, we must now determine whether, in a collateral attack, the violation of the *Klessig* requirements can be raised to the level of a constitutional violation and, if so, under what circumstances.

¶ 23. Ernst argues that our decision in *Hahn* should not prohibit a collateral challenge based upon the failure to follow the *Klessig* requirements. He contends that such a challenge based upon the failure to follow *Klessig* does not present a mere technical procedural violation, but rather that the required procedure is one by which the courts determine if a defendant validly waived his Sixth Amendment right to counsel. Specifically, Ernst argues "the violation of the rule has constitutional implications . . . If the procedure is not followed the default adjudication is that the waiver of counsel was not freely and voluntarily made (i.e. the

---

[5] We have held that a collateral attack in a prior conviction is " 'an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it.' " *State v. Sorenson,* 2002 WI 78, ¶ 35, 254 Wis. 2d 54, 646 N.W.2d 354 (quoting *Zrimsek v. Am. Auto. Ins. Co.,* 8 Wis. 2d 1, 3, 98 N.W.2d 383 (1959)).

defendant was denied his constitutional right to counsel)."

¶ 24. Conversely, the State contends that a violation of the *Klessig* requirements cannot comprise a constitutional violation and, thus, satisfy the test for a collateral attack. The State argues that there is a difference between a constitutional standard and "the procedures which states must follow to achieve conformance with the constitutional standard." *Bangert,* 131 Wis. 2d at 257. The State relies on our decision in *Bangert* to argue that the violation of a circuit court's required duty, based on our superintending and administrative authority, cannot, by itself, be the basis for a constitutional violation. In *Bangert,* we held that a violation of a court-made procedural rule, "though itself not constitutionally significant, may have constitutional ramifications," because "[i]f a defendant's understanding of the nature of the charge is not evidenced in some manner, then the plea will not meet the constitutional standard of voluntariness." *Id.* at 261 n.3.

¶ 25. We agree that a defendant must do more than allege that " 'the plea colloquy was defective' " or the " 'court failed to conform to its mandatory duties during the plea colloquy' " to satisfy the standard for collateral attacks set forth in *Hahn. See State v. Hampton,* 2004 WI 107, ¶ 57, 274 Wis. 2d 379, 683 N.W.2d 14. Instead, the defendant must make a prima facie showing that his or her constitutional right to counsel in a prior proceeding was violated. In order to avoid any question concerning a valid waiver, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley v. Cochran,* 369 U.S. 506, 516 (1962). For there

318

to be a valid collateral attack, we require the defendant to point to facts that demonstrate that he or she "did not know or understand the information which should have been provided" in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel. *See Hampton,* 274 Wis. 2d 379, ¶ 46 (citing *Bangert,* 131 Wis. 2d at 274–75). Any claim of a violation on a collateral attack that does not detail such facts will fail.

■■■

¶ 26. Applying the above principles to the facts of this case, we hold that Ernst's attempt to initiate a collateral attack failed. As noted earlier: "Whether a party has met its burden of establishing a prima facie case is a question of law that we decide *de novo.*" *Baker,* 169 Wis. 2d at 78 (citation omitted). In his motion to avoid, for enhancement purposes, the effect of his prior conviction, Ernst asked the circuit court to set aside his fourth OWI conviction, because he was "not represented by counsel and the court did not take a knowing and voluntary waiver of counsel from the defendant. . . ." Ernst made no mention of specific facts that show that his waiver was not a knowing, intelligent, and voluntary one. Instead, Ernst simply relied on the transcript and asserted that the court's colloquy was not sufficient to satisfy *Klessig.* Specifically, he argued: "The Court did not take a valid waiver of counsel from the defendant in Case No. 02–CT-70 because the Court did not address each of the four *Klessig* factors with Alan Ernst in that case." Since this was a collateral attack, the lack of specific facts resulted in a failure to establish a prima facie case that Ernst did not knowingly, intelligently, and voluntarily waive his right to counsel. Accordingly, the decision of the circuit court on this issue must be reversed.

319

## V

¶ 27. We next determine the proper procedures for the court to apply when the defendant makes a sufficient prima facie showing on a collateral attack. Both parties agree that if the defendant makes such a showing, then the burden shifts to the State to prove by clear and convincing evidence that the defendant's waiver of counsel was knowingly, intelligently, and voluntarily entered. *See Klessig,* 211 Wis. 2d at 207.[6] We agree with the parties as to the burden of proof, and conclude that the court should, at such a time, hold an evidentiary hearing to allow the State an opportunity to meet its burden.[7] "If the State is unable to establish by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his right to the assistance of counsel, the defendant will be entitled . . ." to attack, successfully and collaterally, his or her previous conviction. *Id.*

¶ 28. Ernst argues, however, the State should not be able to examine the defendant at the evidentiary hearing. He contends that no case in Wisconsin involv-

---

[6] In *State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997), we agreed to "adopt an evidentiary hearing procedure for resolving invalid waiver of counsel claims that is similar to the procedure established by this court for the resolution of guilty plea waivers." *Id.* at 207. Accordingly, like our decision in *State v. Baker,* 169 Wis. 2d 49, 485 N.W.2d 237 (1992), we require the State to prove by clear and convincing evidence that the waiver of counsel was "knowing, intelligent, and voluntary." *Klessig,* 211 Wis. 2d at 207.

[7] This is the same procedure that we have used when the appeal arises out of a postconviction motion challenging the validity of a defendant's waiver of counsel. *Id.* (citing *Keller v. State,* 75 Wis. 2d 502, 511–12, 249 N.W.2d 773 (1977)).

ing a collateral attack has required the defendant to testify at an evidentiary hearing, and that this court should refrain from doing so. Ernst also argues that the State's reliance on *Klessig* and *Bangert* is misplaced. Specifically, he asserts that because both cases involved a direct attack on a prior conviction, they should be treated differently than a collateral attack. Finally, Ernst contends that any requirement to make the defendant testify impinges his Fifth Amendment privilege against compulsory self-incrimination.[8]

¶ 29.   The State, on the other hand, agrees with the circuit court that Ernst should be required to testify as to his knowledge concerning the previous waiver of counsel, without protection from the Fifth Amendment privilege. The State asserts that, under current Wisconsin law, it is acceptable to examine the defendant at a hearing to establish if the defendant's waiver of counsel was knowing, intelligent, and voluntary. Additionally, the State contends that the defendant cannot rely on Fifth Amendment protection, because a defendant such as Ernst has waived the privilege by putting into issue his or her lack of understanding regarding the waiver of counsel.

---

[8] The Fifth Amendment of the United States Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

¶ 30. We agree with the State that Wisconsin law allows a defendant to be questioned at an evidentiary hearing concerning a collateral attack on the waiver of right to counsel. In *Klessig,* we held that at an evidentiary hearing "the State is required to prove by clear and convincing evidence that [the defendant's] waiver of counsel was knowing, intelligent and voluntary." *Klessig,* 211 Wis. 2d at 207. In doing so, we adopted "an evidentiary hearing procedure for resolving invalid waiver of counsel claims that is similar to the procedure established by this court for the resolution of guilty plea waivers." *Id.*

¶ 31. In *Bangert,* this court established the procedure regarding guilty plea waivers. There, we held that when the defendant makes a prima facie showing that he or she "did not know or understand the information which should have been provided at the plea hearing, the burden will then shift to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered. . . ."[9] *Bangert,* 131 Wis. 2d at 274. To do so, the State "may then utilize any evidence which substantiates that the plea was knowingly and voluntarily made." *Id.* at 274–75. Specifically, the court held:

---

[9] We decline to apply a "presumption against waiver" when the burden shifts to the State in situations involving collateral attacks. We agree with the State that there is no reason to presume the defendant did not properly waive his right to counsel in a collateral attack. To do so, would "ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments." *Parke v. Raley,* 506 U.S. 20, 29 (1992) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

> In essence, the state will be required to show that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him. The state may examine the defendant or defendant's counsel to shed light on the defendant's understanding or knowledge of information necessary for him to enter a voluntary and intelligent plea.

*Id.* at 275 (citations omitted). We adopt the same procedure as *Bangert* and *Klessig* outlined, for situations such as the one here involving a collateral attack, if a prima facie case has been shown.[10] We find no reason to apply a different procedure in this circumstance than that which would apply on a direct attack against a prior conviction.[11]

---

[10] This procedure is also similar to that adopted for *Goodchild* hearings in Wisconsin. In *State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965), this court adopted a procedure which provides for a separate hearing during which the circuit court judge is to determine whether a statement was voluntarily made and, thus, admissible at trial. In such a proceeding: "The state shall have the burden of proving voluntariness beyond a reasonable doubt. At this hearing the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained." *Id.* at 264–65 (footnote omitted).

> If the State were not allowed to call the defendant in such a hearing, the court would have the impossible task of deciding the voluntariness of a confession without the defendant's recitation of his or her version of the circumstances behind the confession. Similarly, in a situation involving a collateral attack, the State must be able to call the defendant to determine whether his or her waiver of counsel was a knowing, intelligent, and voluntary one.

[11] Although Ernst argues that we should apply different procedures on a direct attack than we do on a collateral attack,

¶ 32.   We next address a defendant's ability to raise his or her Fifth Amendment privilege against testifying in an evidentiary hearing. Ernst alleges that if he were made to testify at an evidentiary hearing on a collateral attack, the court would be impinging upon his Fifth Amendment privilege against self-incrimination. The State contends that the defendant is precluded from asserting his or her Fifth Amendment privilege against testifying, because the privilege has been waived.

■

¶ 33.   We agree with the State that a defendant, by putting into issue his or her lack of knowledge regarding the waiver of counsel, has waived the privilege against testifying. To make a prima facie showing a defendant is required to point to facts that demonstrate that he or she did not knowingly, intelligently, and voluntarily waive his or her constitutional right to counsel. An affidavit from the defendant setting forth such facts would be necessary, in order to establish a prima facie case. Accordingly, once a defendant successfully makes a prima facie showing, the defendant cannot avoid testifying about the circumstances concerning the waiver when the State decides to challenge the claim that the waiver was not valid. No defendant can "testify voluntarily about a subject and then invoke the

we find this argument to be unpersuasive. Under a direct attack, like in *Klessig,* Ernst concedes that a defendant could be compelled to testify at an evidentiary hearing whether he or she knowingly waived the right to counsel. However, Ernst then alleges that a collateral attack situation is entirely different than a direct attack and, thus, requires different procedures. We conclude that such a ruling would make the State's burden in a collateral attack more difficult than in a direct attack, and we find no reason for doing so.

privilege against self-incrimination when questioned about the details." *Mitchell v. United States,* 526 U.S. 314, 321 (1999) (citation omitted).[12]

¶ 34. Similar problems arise in regard to a defendant testifying at a criminal trial. In *Brown v. United States,* 356 U.S. 148 (1958), the United States Supreme Court held that a defendant has no right to set forth facts in his favor during a direct examination, without laying himself open to cross-examination. *See id.* at 155. We find language here relevant to our case:

> Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the

---

[12] In *Mitchell v. United States,* 526 U.S. 314 (1999), the Supreme Court held that a defendant's guilty plea did not waive his or her right to remain silent at sentencing proceedings. Specifically, the court held: "[t]he Fifth Amendment by its terms prevents a person from being 'compelled in any criminal case to be a witness against herself.' To maintain that sentencing proceedings are not part of 'any criminal case' is contrary to the law and to common sense." *Id.* at 327 (citation omitted).

Certainly *Mitchell* should not be extended to situations involving collateral attacks. The Supreme Court's holding was limited to the defendant's right to remain silent with respect to the specific facts of the offense in question. In this case, the State wants to ask Ernst about whether his waiver of right to counsel, in a previous proceeding, was knowing, intelligent, and voluntary. The State would not make any inquiry regarding the specific facts involved in his previous OWI conviction.

We also note that other courts have declined to extend *Mitchell* to situations involving sentence enhancements, where there is no inquiry about the factual details of the underlying crime. *See State v. Blunt,* 71 P.3d 657, 662 (Wash. Ct. App. 2003).

matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.

*Id.* at 155–56. A similar scenario arose before us in *Neely v. State,* 97 Wis. 2d 38, 292 N.W.2d 859 (1980). In that case, the defendant took the stand in his own defense, but refused to answer questions on cross-examination on the grounds that his answers might be incriminating. This court held, in denying the defendant's request to invoke the Fifth Amendment, "that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. *See id.* at 45 (citations omitted). Therefore, just as we will not allow a defendant to take the stand in his or her own behalf and then claim his or her Fifth Amendment privilege on matters related to the subject matter of the direct examination, we will not allow a defendant to claim in an affidavit necessary to establish a prima facie case, in support of his or her motion, a lack of a knowing, intelligent, and voluntary waiver of counsel, and then raise the privilege upon the State's attempt to refute that claim.

¶ 35.   Finally, if the defendant refuses to testify under these circumstances, a circuit court would be free to draw the reasonable inference that the State has satisfied its burden, and that the waiver of counsel was a knowing, intelligent, and voluntary one. The defendant may not "pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry." *Mitchell,* 526 U.S. at 322.

¶ 36. While we recognize that courts in criminal proceedings have generally not inferred guilt from a defendant's silence, *see Griffin v. California,* 380 U.S. 609 (1965), in this circumstance, where the state's ability to meet its burden relies on the defendant's testimony, we conclude that a refusal of the defendant to testify would allow the circuit court reasonably to infer that the state has met its burden of showing a knowing, intelligent, and voluntary waiver of counsel by the defendant. Such a determination is very different than inferring guilt based on the silence of a defendant.

## VI

¶ 37. In sum, we conclude, based on our superintending and administrative authority, that the requirements this court imposed in *Klessig,* regarding waiver of counsel, survive the United States Supreme Court's decision in *Iowa v. Tovar.* Second, we hold that an alleged violation of the requirements of *Klessig* can form the basis of a collateral attack, as long as the defendant makes a prima facie showing, pointing to facts that demonstrate that he or she did not knowingly, intelligently, and voluntarily waive his or her constitutional right to counsel. Third, we conclude that when the defendant successfully makes a prima facie showing, the burden to prove that the defendant validly waived his or her right to counsel shifts to the State. Fourth, we hold that the State may call and elicit testimony from the defendant at an evidentiary hearing in an attempt to meet its burden and, in turn, the defendant may not raise his or her Fifth Amendment privilege against testifying. Finally, we conclude that the defendant's refusal to testify under these circum-

stances allows a circuit court reasonably to infer that the State has satisfied its burden of showing a knowing, intelligent, and voluntary waiver of the right to counsel.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 38. SHIRLEY S. ABRAHAMSON, C.J. *(concurring)*. For a discussion of the nature of the supreme court's superintending authority over all courts, see Part I of my concurrence in *State v. Jerrell C.J.,* 2005 WI 105, 283 Wis. 2d 145, 699 N.W.2d 110, joined by Justices Bradley, Crooks, and Butler.

¶ 39. DAVID T. PROSSER, J. *(concurring)*. In *State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997), this court was asked to determine whether defendant Klessig had knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel before he represented himself in a felony jury trial. The court noted that the trial court had not engaged the defendant in an on-the-record colloquy to assess his waiver, and it held that "the record is insufficient to determine whether Klessig's waiver of counsel was knowing, intelligent and voluntary." *Klessig,* 211 Wis. 2d at 197. To remedy this deficiency, the court remanded the case to the circuit court for an evidentiary hearing at which the State would be required to prove by clear and convincing evidence that Klessig's waiver of counsel was knowing, intelligent, and voluntary. *Id.* at 207.

¶ 40. As part of the opinion, the court *mandated* "the use of a colloquy in every case where a defendant seeks to proceed pro se [in order] to prove knowing and voluntary waiver of the right to counsel." *Id.* at 206. It then set forth the following requirements:

> To prove such a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure that

328

the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him. *See Pickens [v. State],* 96 Wis. 2d [549,] 563–64[, 292 Wis. 2d 601 (1980)]. If the circuit court fails to conduct such a colloquy, a reviewing court may not find, based on the record, that there was a valid waiver of counsel.

When an adequate colloquy is not conducted, and the defendant makes a motion for a new trial or other postconviction relief from the circuit court's judgment, the circuit court *must* hold an evidentiary hearing on whether the waiver of the right to counsel was knowing, intelligent, and voluntary.

*Id.* at 206–07 (emphasis added).

¶ 41.   The court did not identify the source of its authority to mandate the above-described colloquy. It simply explained that

[c]onducting such an examination of the defendant is the clearest and most efficient means of insuring that the defendant has validly waived his right to the assistance of counsel, and of preserving and documenting that valid waiver for purposes of appeal and postconviction motions. [A] properly conducted colloquy serves the dual purposes of ensuring that a defendant is not deprived of his constitutional rights and of efficiently guarding our scarce judicial resources. We hope that our reaffirmation of the importance of such a colloquy will encourage the circuit courts to continue their vigilance in employing such examinations.

*Id.* at 206.

329

¶ 42. The *Klessig* decision was understandable and rational, and I have no trouble affirming the *substance* of it in this case, notwithstanding the Supreme Court's ruling in *Iowa v. Tovar*, 541 U.S. 77 (2004). I do have trouble, however, with this court's utilization of its "superintending and administrative authority" in Article VII, Section 3 of the Wisconsin Constitution as a basis for its action.

¶ 43. I expressed my concern about the misapplication of Article VII, Section 3 in *State v. Jerrell C.J.*, 2005 WI 105, 283 Wis. 2d 145, 699 N.W.2d 110 (Prosser, J., concurring in part, dissenting in part). The present case represents at least the second time this term that the court has invoked this superintending authority. *See Jerrell.*

¶ 44. My concern about the court's new reliance on this provision is threefold. First, the superintending authority of the supreme court over all courts is intended to give this court broad power to protect the legal rights of a litigant when the ordinary course of litigation, such as review, is inadequate. The authority was never intended as carte blanche power to mandate "rules" of general application for the bench and bar through the vehicle of individual cases. This is the gist of my *Jerrell* dissent.

¶ 45. Second, the use of the court's superintending authority in the manner it is now being used can become addictive and lead to abuse. Over and over our opinions repeat the mantra that our superintending authority is "unlimited in extent" or "limited only by the necessities of justice," as though there were no bounds to the court's power to do "justice." This sort of nonsense needs to be exposed before this court does something that will provoke a crisis. By contrast, our court does have power to promulgate judicial rules through

an orderly open process. *See* Wis. Stat. § 751.12 and SCR Ch. 98. This power is both inherent and delegated, but it is not unlimited. Our invocation of the court's superintending authority as justification to make rules in opinions is an indication that we don't think we have traditional rulemaking power over a particular subject or we are unwilling to take the time to go through the proscribed rulemaking process.

¶ 46. Third, the court does not necessarily do a good job when it legislates from the bench. We will see this, in time, in the *Jerrell* rule because the court failed to answer many important questions about its scope. We see it in this case as we attempt to apply the "rule" from *Klessig*.

¶ 47. *Klessig* involved a direct appeal. The court said: "When an adequate colloquy is not conducted, and the defendant makes a motion for a new trial or other postconviction relief from the circuit court's judgment, the circuit court *must* hold an evidentiary hearing on whether the waiver of the right to counsel was knowing, intelligent, and voluntary." *Klessig,* 211 Wis. 2d at 206–07 (emphasis added). The *Klessig* admonition did not draw any distinction between a direct appeal and a collateral attack, but it would have been fine if the court had not portrayed it as a "rule" for everyone. Today we are forced to "amend" that "rule" to avoid the result we dictated in the previous mandate.

¶ 48. The court should confine itself to the adoption of real "rules" through proper procedures and the pronouncement of aspirational standards and guidelines that are persuasively explained, faithfully applied, and quickly included in the Benchbook for judges. The latter course would avoid a separation of powers issue

331

and allow judges some latitude in the way they manage the courts and protect statutory and constitutional rights.

¶ 49.  I therefore respectfully concur.

¶ 50.  JON P. WILCOX, J. *(concurring in part, dissenting in part).* I agree with the majority opinion that this court should continue to require the waiver of counsel colloquy set forth in *State v. Klessig,* 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997). Majority op., ¶ 2. As the court recognized in *Klessig,* such a colloquy serves to conserve judicial resources on appeal and ensures that a valid waiver of counsel is taken in a clear and efficient manner. *Klessig,* 211 Wis. 2d at 206.

¶ 51.  I also agree with the majority's decision to do so utilizing this court's superintending and administrative authority in this instance for two reasons. First, as the majority correctly indicates, majority op., ¶ 18, *Klessig* itself can be read as imposing the colloquy requirement as a court-made procedural rule. *Klessig,* 211 Wis. 2d at 206. Second, mandating the colloquy requirement as a matter of state constitutional law would be inconsistent with *Klessig.* As we stated in *Klessig, "[t]he scope, extent, and, thus, interpretation of the right to assistance of counsel is identical under the Wisconsin Constitution and the United States Constitution." Id.* at 202–03 (emphasis added). *See also Jones v. State,* 63 Wis. 2d 97, 105, 216 N.W.2d 224 (1974)(accord). In *Iowa v. Tovar,* 541 U.S. 77, 91–92 (2004), the United States Supreme Court held that one of the colloquy requirements we set forth in *Klessig* is not mandated by the federal constitution.

¶ 52.  One of the requirements we set forth in *Klessig* was that the defendant be informed of the "difficulties and disadvantages of self-representation[.]" *Klessig,* 211 Wis. 2d at 206. In *Tovar,* the Supreme

Court held that a strikingly similar requirement imposed by the Iowa Supreme Court was not compelled by the Sixth Amendment. *Tovar,* 541 U.S. at 91–92. As such a requirement is not compelled by the federal constitution and because "[t]he scope, extent, and, thus, interpretation of the right to assistance of counsel is identical under the Wisconsin Constitution and the United States Constitution[,]" *Klessig,* 211 Wis. 2d at 202–03, such a requirement cannot be mandated by the Wisconsin Constitution. While some of the requirements we set forth in *Klessig* may be constitutionally necessary before a defendant can validly waive his right to counsel,[1] clearly a defendant is not constitutionally entitled, as part of the right to counsel, to be warned about the dangers and disadvantages of self-representation.

¶ 53.   As such, I disagree with the majority's conclusion that a violation of *Klessig* in this instance *may* form the basis of a collateral attack on Ernst's guilty plea. Majority op., ¶ 2. Ernst argues he is entitled to a plea withdrawal because he "was not adequately instructed on the difficulties and disadvantages of proceeding pro se." Majority op., ¶ 6. As discussed, in light of *Tovar,* such an instruction is not required under either the federal or state constitution.

¶ 54.   In *State v. Hahn,* 2000 WI 118, ¶ 4, 238 Wis. 2d 889, 618 N.W.2d 528, this court held that a defendant cannot collaterally challenge a prior state conviction

---

[1] *Compare State v. Klessig,* 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997)("the circuit court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel[.]") *with Iowa v. Tovar,* 541 U.S. 77, 88 (2004)("We have described a waiver of counsel as intelligent when the defendant 'knows what he is doing and his choice is made with eyes open.' ")(quoting *Adams v. United States,* 317 U.S. 269, 279 (1942)).

unless the challenge is based on "a violation of the constitutional right to a lawyer" in the previous proceeding. "In an enhanced sentence proceeding predicated on a prior conviction, the U.S. Constitution requires a trial court to consider an offender's allegations that the prior conviction is invalid only when the challenge to the prior conviction is based on the denial of the offender's constitutional right to a lawyer." *Id.,* ¶ 17.

¶ 55. Thus, logically, if a defendant pleading guilty need not be informed of the dangers and disadvantages of self-representation as part of the constitutional guarantee of the right to counsel, and if the only legitimate basis for collaterally attacking a prior conviction is the denial of the constitutional right to counsel, then the failure of the circuit court to warn the defendant as to the dangers and disadvantages of proceeding pro se cannot form the basis for a collateral attack on a prior conviction.

¶ 56. As noted previously, some of the *Klessig* requirements may be constitutionally necessary, and to that extent, a violation of *Klessig* could, in some instances, form the basis of a collateral attack on a prior conviction. As the majority opinion correctly indicates: "*Klessig* can form the basis of a collateral attack, as long as the defendant makes a prima facie showing, pointing to facts that demonstrate that he or she did not knowingly, intelligently, and voluntarily waive his or her constitutional right to counsel." Majority op., ¶ 2. However, under *Tovar,* being informed of the dangers and disadvantages of self-representation is *not* part of the constitutional right to counsel. While failure to provide this particular *Klessig* warning may form the basis for a reversal on direct appeal, *see Klessig,* 211 Wis. 2d at 206, it cannot, under *Tovar* and

*Hahn,* form the basis of a collateral attack. Thus, I dissent from Part IV of the majority opinion to the extent it suggests that the failure of the circuit court to inform a defendant of the dangers and disadvantages of self-representation may form the basis of a collateral attack on his conviction or has any relevance in determining whether the defendant was denied the constitutional right to counsel.

¶ 57.   I do, however, fully join Part V of the majority opinion, addressing the proper procedures for a circuit court to follow once the defendant has made a proper prima facie showing of denial of the right to counsel.