COURT OF APPEALS
DECISION
DATED AND FILED

January 18, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1613-CR**

Cir. Ct. No. 2018CF505

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

ERIC JON LANTZ,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Chippewa County: JAMES M. ISAACSON, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Eric Lantz appeals from a judgment convicting him of operating a motor vehicle while intoxicated (OWI), as a seventh offense.

Lantz asserts that the circuit court erred by denying his motion to collaterally attack one of his prior OWI convictions. We conclude that the court properly denied Lantz's motion because Lantz failed to make a prima facie showing that his right to counsel was violated in the prior case. We therefore affirm.

## BACKGROUND

¶2 In 2018, the State charged Lantz with OWI and operating a motor vehicle with a prohibited alcohol concentration (PAC), each as a seventh offense. The complaint alleged that Lantz had six prior OWI convictions, including an Eau Claire County conviction entered on April 30, 1998. Before trial, Lantz moved to collaterally attack his 1998 OWI conviction so that it could not be used to enhance his sentence in the instant case. In the motion, Lantz asserted that he "did not know and understand the information that should have been provided per [*State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997),] and thus did not appropriately waive his right to counsel" in the 1998 case.

¶3 In support of his collateral attack motion, Lantz filed an affidavit averring that he was self-represented when he pled guilty to the OWI charge in the 1998 case. Lantz conceded that he made "a deliberate choice to proceed without counsel" in that case. He averred, however, that he was "unaware of the difficulties and disadvantages of self-representation and of the seriousness of the charge or charges … which [he] was facing and pled to but was aware of the general range of possible penalties." He further averred that: (1) he did not know that an attorney could help him "in identifying the strong and weak legal points of [his] case and possibly find a defense or mitigating circumstance"; (2) he was unaware that an attorney could assist him in resolving his case via a settlement with the prosecutor; and (3) he was unaware that an attorney could assist him in

"navigating the court system" and "dealing with issues with the Department of Motor Vehicles relating to [his] driver's license."

¶4      Lantz also averred that at the time of his arrest in the 1998 case, he was placed on a probation hold in a previous case and understood, based on conversations with his probation agent, that the Department of Corrections would not seek to revoke his probation in the prior case if he resolved the 1998 OWI case. Lantz further averred:

> [M]y recollection is that I was offered a time served sentence to resolve my case and accepted the offer without discussing the case with an attorney. When I accepted the offer from the prosecutor, I was unaware and did not understand that the judge could sentence me to something other than the offer made by the prosecutor.

¶5      Lantz's attorney also submitted an affidavit in support of Lantz's collateral attack motion. Counsel averred that he had contacted the Eau Claire County Clerk of Court regarding the citation issued to Lantz in 1998, and he was informed "that the clerk could not locate any information relating to the citation … nor could the clerk locate any information relating to … Lantz from that year." Counsel was also informed "that any records relating to the citation … had likely been destroyed pursuant to the Eau Claire County Clerk of Court's file retention policy."

¶6      The circuit court held a hearing on Lantz's collateral attack motion in May 2019. During the hearing, defense counsel asserted that Lantz had made a "prima facie case" that his right to counsel was violated in the 1998 case. Counsel therefore stated that Lantz would rest on the contents of his affidavit, while reserving the right to rebut any evidence the State presented. In response, the State did not present any evidence showing that Lantz was represented by counsel

3

in the 1998 case or that he knowingly, intelligently, and voluntarily waived his right to counsel in that case. Instead, the prosecutor noted that CCAP[1] showed that Lantz had been charged with "numerous felonies and misdemeanors" dating back to 1989. Based on "the results that Mr. Lantz has gotten," the prosecutor surmised that attorneys "probably were involved" in some of those prior cases.

¶7      The circuit court then interjected, noting that the version of CCAP available to the court contained more information than the version available to the parties. Specifically, the court stated that its version of CCAP showed that "on April 30, 1998, Eau Claire County Case 1998 CM 552, Mr. Lantz appeared with Attorney Mary Liedtke and pled to a second offense OWI." The court continued, "CCAP says Mary Liedtke was his attorney of record, and in that case there was a plea questionnaire and waiver of rights form filed on that same date with Miss Liedtke in the courtroom." The court then showed the parties a "screen shot" of this information from the court's version of CCAP. That screen shot was not marked as an exhibit, however, and it does not appear in the appellate record.

¶8      In response, Lantz's attorney conceded that the circuit court's CCAP report "does reflect Miss Liedtke entering an appearance on March 27th." Counsel maintained, however, that Lantz "does not recall having an attorney" in the 1998 case. Based on the information from the CCAP report, the court denied Lantz's motion to collaterally attack his 1998 conviction.

---

[1] "CCAP is an acronym for Wisconsin's Consolidated Court Automation Programs. The online website reflects information entered by court staff." *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

¶9 Lantz subsequently moved for reconsideration. When reciting the procedural history of the case, Lantz asserted that the circuit court had "made a finding" during the May 2019 hearing that Lantz made a prima facie showing that his right to counsel was violated in the 1998 case. Lantz then noted that the State did not present any evidence during the hearing to rebut his prima facie case, and the only evidence disputing his prima facie case came from the court's "independent investigation." Lantz argued that the court's independent investigation was improper under SCR 60.04 and *State v. Vanmanivong*, 2003 WI 41, 261 Wis. 2d 202, 661 N.W.2d 76. Lantz further contended: "Without the improperly obtained independent evidence, the Court can reach only one conclusion on the record, that [Lantz's collateral attack] motion should be granted."

¶10 The circuit court held a hearing on Lantz's motion for reconsideration, during which the court indicated that it was hesitant to take judicial notice of the CCAP report discussed during the prior hearing. The court then directed the prosecutor "to do a thorough check of whatever CCAP you have available to you" to determine whether there were records showing that Lantz was represented by an attorney in the 1998 case.

¶11 At the next hearing, a different prosecutor appeared on behalf of the State and conceded that he had no information regarding the assigned prosecutor's investigation. The circuit court explained, however, that it had consulted with colleagues, and "[t]he majority of the reports that I get and the advice I am taking is that once I'm given the case number and I look at the case like any other case cited as precedent, I am not investigating independent facts." In other words, the court concluded that it had not erred by considering the CCAP report. The court therefore denied Lantz's reconsideration motion.

¶12    The case proceeded to a bench trial, and the circuit court found Lantz guilty of the OWI charge, as a seventh offense.  The PAC charge was dismissed and read in for purposes of sentencing.  The court ultimately sentenced Lantz to three years of initial confinement followed by four years of extended supervision, but it stayed his sentence pending appeal.  Lantz now appeals, arguing that the court erred by denying his motion to collaterally attack his 1998 OWI conviction.

## DISCUSSION

¶13    "A defendant may collaterally attack a prior conviction in an enhanced sentence proceeding only on the ground that the defendant was denied the constitutional right to counsel" in the previous case.  *State v. Hammill*, 2006 WI App 128, ¶6, 293 Wis. 2d 654, 718 N.W.2d 747.  To be constitutionally valid, a defendant's waiver of the right to counsel must be entered knowingly, intelligently, and voluntarily.  *Klessig*, 211 Wis. 2d at 203-04.  Before permitting a defendant to proceed without counsel, a circuit court must

> conduct a colloquy designed to ensure that the defendant:  (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him.

*Id.* at 206.

¶14    In *State v. Ernst*, 2005 WI 107, ¶25, 283 Wis. 2d 300, 699 N.W.2d 92, our supreme court established a burden-shifting procedure for evaluating collateral attack motions.  Initially, the burden rests with the defendant to make a prima facie showing that his or her constitutional right to counsel was violated in a

prior case. *Id.* To satisfy that burden, the defendant must "point to facts that demonstrate that he or she 'did not know or understand the information which should have been provided' in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel." *Id.* (citation omitted). "Any claim of a violation [of the right to counsel] on a collateral attack that does not detail such facts will fail." *Id.* If the defendant makes a prima facie showing that his or her right to counsel was violated in a prior case, the burden shifts to the State to prove by clear and convincing evidence that the defendant's waiver of counsel in the prior case was knowing, intelligent, and voluntary. *Id.*, ¶27.

¶15 Our supreme court recently clarified, however, that the burden-shifting procedure established in *Ernst* does not apply in cases, like this one, where "the relevant hearing transcript from the prior conviction is unavailable." *State v. Clark*, 2022 WI 21, ¶2, 401 Wis. 2d 344, 972 N.W.2d 533. Instead, in a case where the relevant hearing transcript is unavailable, "the defendant retains the burden to demonstrate the right to counsel was violated." *Id.*

¶16 Lantz filed his brief-in-chief in this appeal, and the State filed its response brief, before the supreme court issued its decision in *Clark*. In his brief-in-chief, Lantz asserted that the circuit court found that he made a prima facie showing that his right to counsel was violated in the 1998 case. Lantz then argued that the State "effectively conceded" during the May 2019 hearing "that it could not present any evidence refuting Lantz's assertion that he did not have counsel and did not validly waive his right to counsel in the 1998 Eau Claire County case." Given that concession, Lantz asserted that "[t]he only possible evidentiary basis remaining was the court's own investigation." Lantz then argued that the court's independent investigation was improper; that the CCAP report was

7

inadmissible; and that, regardless, the report was never admitted into evidence. Lantz therefore contended that the State failed to meet its burden of proof, and, as a result, the court erred by denying his collateral attack motion.

¶17     In its response brief, the State argued that contrary to Lantz's assertion, the circuit court never found that Lantz had made a prima facie showing that his right to counsel was violated in the 1998 case.  The State further argued that Lantz's affidavit was insufficient to make the required prima facie showing. In the alternative, the State argued that even if Lantz made a prima facie showing that his right to counsel was violated in the 1998 case, the CCAP report showed that Lantz was, in fact, represented by counsel in that case.

¶18     Lantz filed his reply brief after our supreme court issued its decision in *Clark*.  In his reply brief, Lantz did not dispute the State's assertion that the circuit court never found that he made a prima facie showing that his right to counsel was violated in the 1998 case.  Lantz's reply brief also failed to address the State's argument that Lantz did not make the required prima facie showing. Instead, Lantz argued in his reply brief that this court should remand for an evidentiary hearing to give him "an opportunity to meet the new and higher burden established by [*Clark*]."

¶19     We agree with the State that Lantz failed to make a prima facie showing that his right to counsel was violated in the 1998 case.[2]  As an initial

_____

[2] As the State correctly notes, the circuit court never found that Lantz made the required prima facie showing.  In support of his assertion that the court made such a finding, Lantz merely notes that the court held a hearing on his collateral attack motion.  However, a circuit court has discretion to hold an evidentiary hearing on a defendant's motion, even when the motion is facially insufficient.  *See State v. Velez*, 224 Wis. 2d 1, 17, 589 N.W.2d 9 (1999).  Thus, the mere fact that the court held a hearing on Lantz's collateral attack motion does not show that the court found that Lantz had made a prima facie case.

(continued)

matter, we note that the State expressly argued in its response brief that Lantz failed to make a prima facie showing that his right to counsel was violated in the 1998 case, and Lantz did not respond to that argument in his reply brief. We therefore deem Lantz to have conceded the State's argument that he did not make the required prima facie showing. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

¶20 Regardless, even absent Lantz's concession, we conclude the record shows that Lantz failed to make a prima facie showing that his right to counsel was violated in the 1998 case. As noted above, to make a prima facie showing that his or her right to counsel was violated in a prior proceeding, a defendant must "point to facts that demonstrate that he or she 'did not know or understand the information which should have been provided' in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel." *Ernst*, 283 Wis. 2d 300, ¶25 (citation omitted). Here, although Lantz asserted in his affidavit that he was "unaware of the difficulties and disadvantages of self-representation and of the seriousness of the charge or charges … which [he] was facing," he did not allege any facts demonstrating that unawareness or explaining what caused him to be unaware of the relevant information.

---

In any event, whether a defendant has made a prima facie showing of a violation of the right to counsel is a question of law that we review independently. *State v. Ernst*, 2005 WI 107, ¶10, 283 Wis. 2d 300, 699 N.W.2d 92. As such, we may independently determine whether Lantz made the required prima facie showing. Furthermore, it is well established that we may affirm a circuit court's decision on different grounds. *See State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010). Here, regardless of whether the circuit court found that Lantz made a prima facie showing that his right to counsel was violated in the 1998 case, we independently conclude that Lantz failed to make the required prima facie showing.

¶21 Notably, Lantz did not aver that the circuit court in the 1998 case failed to conduct a ***Klessig*** colloquy—or conducted a defective ***Klessig*** colloquy—before allowing him to represent himself. Absent any claim of a defective ***Klessig*** colloquy, and absent a transcript of the relevant hearing, we cannot simply assume that the court in the 1998 case failed to conduct a proper colloquy. *See **Parke v. Raley***, 506 U.S. 20, 30 (1992) ("On collateral review, we think it defies logic to presume from the mere unavailability of a transcript … that the defendant was not advised of his [or her] rights.").

¶22 Because Lantz has not alleged that the circuit court failed to conduct an adequate ***Klessig*** colloquy during the 1998 case, we assume that the court conducted a proper colloquy, during which it adequately advised Lantz of the seriousness of the charge and the difficulties and disadvantages of self-representation. Although Lantz averred in his affidavit that he did not understand that information, he has not alleged specific facts demonstrating any reason for his alleged lack of understanding. He has not, for instance, pointed to any extraneous limitation that would have prevented him from understanding the information that the court provided, such as a learning disability, mental illness, or inability to understand English. *See, e.g.*, ***State v. Bohlinger***, 2013 WI App 39, ¶20, 346 Wis. 2d 549, 828 N.W.2d 900, *abrogated on other grounds by **Clark***, 401 Wis. 2d 344 (concluding a defendant made a prima facie showing that his right to counsel was violated by submitting evidence that he had a cognitive disability that prevented him from understanding the information provided to him during a ***Klessig*** colloquy).

¶23 On this record, we cannot conclude that Lantz made a prima facie showing that his right to counsel was violated in the 1998 case. Lantz's affidavit merely asserted, in a general fashion, that Lantz did not understand the seriousness

of the charge in the 1998 case or the difficulties and disadvantages of self-representation. Lantz did not, however, allege any specific facts to support that claim or explain why he did not understand the relevant information. "Any claim of a violation [of the right to counsel] on a collateral attack that does not detail such facts will fail." *Ernst*, 283 Wis. 2d 300, ¶25. Because Lantz failed to make a prima facie showing that his right to counsel was violated in the 1998 case, the circuit court properly denied his motion to collaterally attack the 1998 conviction.[3]

   *By the Court.*—Judgment affirmed.

   This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] In light of our conclusion that Lantz failed to make the required prima facie showing, we need not address the parties' arguments regarding whether the circuit court properly considered the CCAP report. *See* *Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds). Our conclusion that Lantz failed to make a prima facie showing also obviates the need to remand this matter for an evidentiary hearing in light of the supreme court's decision in *State v. Clark*, 2022 WI 21, 401 Wis. 2d 344, 972 N.W.2d 533.