STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott B. BOHLINGER, Defendant-Appellant.

Court of Appeals

*No. 2012AP1060–CR. Submitted on briefs January 22, 2013.
—Decided February 5, 2013*

2013 WI App 39

(Also reported in 828 N.W.2d 900.)

549

On behalf of the defendant-appellant, the cause was submitted on the brief of *Shirlene Perrin* of Hudson.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sara Lynn Larson*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Mangerson, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J.   Scott Bohlinger appeals a judgment convicting him of operating a motor vehicle while intoxicated (OWI), fourth offense. Bohlinger contends the circuit court erred by denying his motion to collaterally attack his second and third OWI convictions. We conclude Bohlinger made a prima facie showing that he did not knowingly, intelligently, and voluntarily waive his right to counsel in the earlier proceedings. We therefore reverse the judgment and remand for an evidentiary hearing, at which the State will have the burden to prove that Bohlinger validly waived his right to counsel.

## BACKGROUND

¶ 2.   In 2011, the State charged Bohlinger with fourth-offense OWI. The Information set forth three prior OWI convictions for sentence enhancement pur-

poses, including two Eau Claire County convictions from 2008 and 2009. Bohlinger moved to collaterally attack the 2008 and 2009 convictions, arguing his guilty pleas in those cases were entered without valid waivers of counsel.

¶ 3.   In support of his motion, Bohlinger submitted transcripts of the 2008 and 2009 plea hearings. During the 2008 plea hearing, the circuit court engaged Bohlinger in the following colloquy regarding his right to counsel:

> The Court: . . . . You're here without an attorney, and I have a sheet from you telling me you're waiving your right to that lawyer. Did you read the sheet?
>
> The Defendant:   Yes.
>
> The Court:   Do you understand it?
>
> The Defendant:   Yes.
>
> The Court:   It tells me that you're 22. You have a high school diploma?
>
> The Defendant:   Yup.
>
> The Court:   No problem reading or writing the English language?
>
> The Defendant:   No.
>
> . . . .
>
> The Court:   Now, there are rights discussed on the form that talk about your right to an attorney. You understand you do have the right to one, and if you can't afford one, one would be appointed for you?
>
> The Defendant:   Yup.
>
> The Court:   And do you also understand the benefits of having an attorney? They're talked about on the second page of the sheet.

The Defendant: Yes.

The Court: And do you also understand you have the right to represent yourself, but it's sometimes difficult, and the difficulties are discussed on the sheet as well?

The Defendant: Yup.

The Court: After reading this, are you sure you wish to represent yourself?

The Defendant: Yes.

The Court: Has anybody offered you anything or threatened you to give up your right to a lawyer?

The Defendant: No.

The Court: Any questions about that?

The Defendant: No.

¶ 4. During the 2009 plea hearing, the circuit court first addressed multiple defendants who were assembled in the courtroom, stating, "[Y]ou do have the right to be represented by an attorney. If you cannot afford an attorney, one will be appointed to represent you at no expense to you if you qualify financially." The court later addressed Bohlinger individually. It ascertained that Bohlinger was twenty-three years old and had graduated from high school, and it engaged him in the following colloquy:

The Court: Now, I want to talk about one important thing. You're here today without a lawyer, and I want to make sure that you're doing that knowingly, voluntarily, and willingly. Do you want to go ahead even though you don't have a lawyer with you?

The Defendant: Yep.

The Court:   Do you understand, sir, that you've got the right to have a lawyer and if you can't afford one, one will be appointed for you and it would be of no charge to you?

The Defendant:   Yep.

. . . .

The Court:   Well, I want to make sure that you understand that, if you have a lawyer, a lawyer might be able to come up with some ideas that will be helpful to you that you didn't think of because you haven't been trained as a lawyer, do you understand that?

The Defendant:   Yep.

The Court:   Do you understand that, in fact, this is a serious matter for you?

The Defendant:   Yes.

The Court:   Do you understand there's no one else in this room that's looking out for your best interest? It's all on your own shoulders here this morning.

The Defendant:   Yep.

. . . .

The Court:   All right. Well, were you here earlier when I talked about those constitutional rights with everyone?

The Defendant:   Yes.

The Court:   Did you understand all of that?

The Defendant:   Yes.

The court also ascertained that Bohlinger was not "suffering from any kind of mental illness or disorder of

any kind[.]" Finally, the court asked whether Bohlinger was confused about anything or had any questions, and Bohlinger responded, "No."

¶ 5. Bohlinger's motion to collaterally attack the 2008 and 2009 convictions did not allege that the colloquies conducted in those cases were deficient in any way.[1] Instead, Bohlinger argued that, because he suffered from "cognitive and learning disabilities," he did not understand the information provided to him about his right to an attorney. In support of this argument, Bohlinger submitted an affidavit, in which he averred, "I have a learning disability and have trouble reading and understanding information as it is presented to me in Court. I did not understand all the information presented to me orally and in writing at both court appearances." Bohlinger also submitted a report written by Dr. Brian Stress, a psychologist, who evaluated Bohlinger in December 2011 and January 2012. Stress concluded Bohlinger did not have the mental capacity to waive his right to an attorney in the 2008 and 2009 cases.

¶ 6. The circuit court held a hearing on Bohlinger's motion. Stress testified that Bohlinger suffers from "mild mental retardation or cognitive disability." He stated Bohlinger's full scale IQ places him in the second percentile, compared to other individuals his age. His verbal IQ places him in the "0.5" percentile, meaning that "his verbal abilities are . . . less than 99.5 percent of people[.]" His reading comprehension places him in the "0.1" per-

---

[1] On appeal, Bohlinger asserts that the waiver colloquies from both the 2008 and 2009 cases were deficient. Because Bohlinger failed to raise this argument in the circuit court, we decline to address it. *See State v. Van Camp*, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997) (We generally do not address issues raised for the first time on appeal.).

centile. Stress also testified that Bohlinger spells at the third grade level and reads at the third grade level "or less." He classified Bohlinger's attention and concentration as falling within the "moderate to severely impaired range[.]"

¶ 7. Stress testified that he reviewed with Bohlinger the waiver of attorney form that Bohlinger completed in the 2008 case. When Stress asked Bohlinger to read aloud from the form, Bohlinger was unable to do so accurately. For instance, the form states that an attorney would "[r]epresent me and speak on my behalf in court." Stress testified Bohlinger read this statement as "you have sent me to speak on my behalf in court." The form also states that an attorney would "explain and assist me with legal and court procedures." When asked to read this statement, Bohlinger read the word "explain," then mumbled for about ninety seconds, then read "in court proceedings." Stress explained that mumbling is "a normal, unfortunate technique that people use who cannot decode words properly. He's waiting for somebody to help him out so that he can agree with them to make it look like he actually is reading."[2]

¶ 8. Stress further testified that Bohlinger could not explain the meaning of the statements on the waiver of attorney form. For instance, when Stress asked Bohlinger what the phrase "explain and assist me with legal and court procedures" meant,

> [Bohlinger] said, they help me with court, what they talk about. I asked him, what does that mean? I'm not

---

[2] Stress's report, which was admitted into evidence at the hearing, included five additional examples of statements from the waiver of attorney form that Bohlinger was unable to read correctly.

557

sure he still understands what that means. So how would an attorney help you there? He responded, they can—they can reduce the sentence. They can do it to the lower what they think they can. I asked him to explain what his last sentence meant, and he was unable to respond.

Stress also stated that he went through the transcripts of the 2008 and 2009 plea hearings with Bohlinger, and Bohlinger "had significant difficulty reading" them and was unable to understand what he read.

¶ 9.   Stress concluded that Bohlinger did not have the cognitive ability to understand the waiver of attorney form he signed in the 2008 case. Regarding both cases, Stress opined that Bohlinger was not competent to waive his right to an attorney because he did not have the capacity to understand the rights he was waiving. Stress also testified Bohlinger was not competent to proceed without an attorney in either case and did not understand the disadvantages of self-representation.

¶ 10.   Stress acknowledged that, during the 2008 and 2009 plea hearings, Bohlinger answered affirmatively when asked whether he understood his rights and did not indicate that he was confused. However, Stress explained that individuals with Bohlinger's cognitive presentation are "overly compliant to authority figures" and "basically agree in order to move on." Thus, Stress concluded it was not surprising that Bohlinger failed to call his lack of understanding to the courts' attention in the 2008 and 2009 cases.

¶ 11.   On cross-examination, Stress admitted that his evaluation of Bohlinger took place several years after the 2008 and 2009 plea hearings. He testified, though, that Bohlinger's mental abilities would not have changed between 2008 and January 2012. He

explained that the tests he conducted are designed to account for age, and "if you're mild[ly] mentally retarded when you're 12, you're going to be mild[ly] mentally retarded when you're 45."

¶ 12.     Stress's testimony was echoed by Lorraine Smith, a special education teacher. Smith testified she taught Bohlinger in middle school and high school. She stated Bohlinger graduated from high school in about 2004 with a "special education diploma," which does not require that the student meet the same standards needed for a regular high school diploma. Her recollection of Bohlinger's abilities was consistent with Stress's testimony, and she described Bohlinger as "significantly limited." She testified that the language in the waiver of attorney form was above Bohlinger's reading comprehension level, and she opined that Bohlinger did not have the capacity to understand court proceedings without an attorney. Smith admitted on cross-examination that her testimony about Bohlinger's abilities was based on impressions she formed several years before the 2008 and 2009 plea hearings. She testified, however, that Bohlinger's mental functioning would not have improved during intervening years.

¶ 13.     The circuit court denied Bohlinger's motion to collaterally attack the 2008 and 2009 convictions. The court conceded, "The evidence establishes that [Bohlinger] did not have the cognitive capability to waive counsel at the time that he did." However, the court nevertheless concluded Bohlinger could not establish that his right to counsel was violated because he did not allege that the waiver colloquies in the 2008 and 2009 cases were deficient. According to the court, when the transcript itself shows that a sufficient colloquy took place, a defendant cannot rely on extrinsic evidence to demonstrate that he or she did not understand

the information provided. Consequently, despite determining that Bohlinger did not have the cognitive ability to waive counsel in the earlier cases, the court concluded Bohlinger had not made a prima facie showing that his waivers were invalid.

## DISCUSSION

¶ 14.  "The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 87 (2004). A defendant may waive his or her right to counsel, but to be constitutionally valid, the waiver must be entered knowingly, intelligently, and voluntarily. *State v. Klessig*, 211 Wis. 2d 194, 203–04, 564 N.W.2d 716 (1997). Thus, when a defendant expresses a desire to proceed without counsel, the circuit court must conduct a colloquy to ensure that the defendant:  (1) made a deliberate choice to proceed without counsel; (2) was aware of the difficulties and disadvantages of self-representation; (3) was aware of the seriousness of the charge or charges; and (4) was aware of the general range of possible penalties. *Id.* at 206.

¶ 15.  A defendant may collaterally attack a prior conviction in an enhanced sentence proceeding on the ground that he or she was denied the constitutional right to counsel in the earlier case. *State v. Hahn*, 2000 WI 118, ¶ 17, 238 Wis. 2d 889, 618 N.W.2d 528. However, when mounting a collateral attack, the defendant must do more than merely assert that the waiver colloquy in the prior case was deficient. *See State v. Ernst*, 2005 WI 107, ¶ 25, 283 Wis. 2d 300, 699 N.W.2d

92. "Instead, the defendant must make a prima facie showing that his or her constitutional right to counsel in [the] prior proceeding was violated." *Id.* While an alleged violation of the *Klessig* requirements may support a collateral attack, the defendant must also "point[] to facts that demonstrate that he or she did not knowingly, intelligently, and voluntarily waive his or her constitutional right to counsel." *Id.*, ¶ 37. In other words, the defendant must point to specific facts that demonstrate he or she " 'did not know or understand the information which should have been provided' in the previous proceeding[.]" *Id.*, ¶ 25 (quoting *State v. Hampton*, 2004 WI 107, ¶ 46, 274 Wis. 2d 379, 683 N.W.2d 14).

¶ 16.   Whether a defendant has made a prima facie showing that his or her right to counsel was violated in an earlier proceeding is a question of law that we review independently. *Id.*, ¶ 10. If the defendant makes a prima facie showing, the burden shifts to the State to prove by clear and convincing evidence that defendant in fact possessed the constitutionally required understanding to knowingly, intelligently, and voluntarily waive the right to counsel. *Id.*, ¶ 27. The State is entitled to an evidentiary hearing in order to meet its burden of proof. *Id.*

¶ 17.   The circuit court concluded that, because Bohlinger did not allege the waiver colloquies in the 2008 and 2009 cases were deficient, Bohlinger could not, as a matter of law, make a prima facie showing that his right to counsel was violated. Consequently, despite finding that the evidence showed Bohlinger did not have the cognitive capability to waive his right to counsel, the court concluded Bohlinger could not collat-

561

erally attack his 2008 and 2009 convictions. We disagree with the court's conclusion.

¶ 18. Neither the circuit court nor the State has pointed to any authority for the proposition that a defendant must allege a defective waiver colloquy in order to make a prima facie showing that his or her right to counsel was violated in an earlier case. No such requirement is set forth in *Ernst*. Instead, *Ernst* states that a defendant must point to "specific facts" showing that he or she did not actually know or understand the information that should have been provided in the earlier proceeding, and therefore did not execute a knowing, intelligent, and voluntary waiver of counsel. *See id.*, ¶¶ 25–26. While *Ernst* states that a defective colloquy "*can*" form the basis for a collateral attack" when supported by additional evidence, it does not hold that a defendant must allege a defective colloquy in order to state a prima facie case. *See id.*, ¶ 37 (emphasis added). The circuit court therefore erred by determining, as a matter of law, that Bohlinger could not make a prima facie showing that his right to counsel was violated without alleging that the waiver colloquies in the 2008 and 2009 cases were deficient.

¶ 19. Additionally, the United States Supreme Court recognized in *Tovar* that the information a defendant must possess to execute a valid waiver of counsel depends on "a range of case-specific factors, including the defendant's education or sophistication[.]" *Tovar*, 541 U.S. at 88. This suggests that, even if a transcript from a previous case evidences a facially valid waiver colloquy, a court may consider factors outside the transcript to determine whether the waiver was actually knowing, intelligent, and voluntary. In particular, the Court's reference to a defendant's "education or sophistication" suggests that a court may take

the defendant's cognitive limitations into account when determining the validity of his or her waiver.

¶ 20. With these principles in mind, we conclude that Bohlinger submitted ample evidence to make a prima facie showing that he did not execute knowing, intelligent, and voluntary waivers of counsel in the 2008 and 2009 cases. His affidavit averred that he has trouble reading and understanding information and that he did not understand the information provided to him during the 2008 and 2009 proceedings. Stress testified that Bohlinger suffers from "mild mental retardation or cognitive disability" and, therefore, did not have the mental capacity to understand the rights he was waiving. Similarly, Smith testified Bohlinger was not capable of reading and understanding the waiver of attorney form he signed and did not have the capacity to understand court proceedings without an attorney. Bohlinger therefore pointed to specific facts showing that he did not have the mental capability to understand the information the courts provided about his right to an attorney and, consequently, did not execute knowing, intelligent, and voluntary waivers of counsel. Even the circuit court admitted that the evidence showed Bohlinger did not have the cognitive capability to waive his right to counsel. Accordingly, Bohlinger made a prima facie showing that his waivers of counsel in the 2008 and 2009 cases were invalid.

¶ 21. Because Bohlinger made a prima facie showing, the burden shifts to the State to prove by clear and convincing evidence that Bohlinger's waivers were in fact knowing, intelligent, and voluntary. *See Ernst*, 283 Wis. 2d 300, ¶ 27. Bohlinger argues the State has failed to meet its burden. However, because the circuit court concluded Bohlinger had not stated a prima facie case,

it denied Bohlinger's motion without giving the State a chance to present evidence. *Ernst* dictates that the State is entitled to an evidentiary hearing in order to meet its burden of proof. *See id.* We therefore remand to the circuit court for an evidentiary hearing, at which the State may attempt to prove that Bohlinger in fact possessed the constitutionally required knowledge and understanding to execute valid waivers of counsel. If the State is unable to meet its burden, Bohlinger will be entitled to "attack, successfully and collaterally," his 2008 and 2009 convictions. *See id.*

*By the Court.*—Judgment reversed and cause remanded for further proceedings.