COURT OF APPEALS
DECISION
DATED AND FILED

February 12, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP1884-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF299

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT M. CHRISTIANSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for La Crosse County: MARK A. HUESMANN, Judge. *Affirmed in part, reversed in part and cause remanded with directions*.

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

¶1    KLOPPENBURG, J. In this case, Robert Christianson pled no contest to one count of operating a motor vehicle while under the influence of an intoxicant (OWI) as an eighth offense. Christianson appeals the circuit court's

rejection of his collateral challenges to three of his prior OWI convictions, which matters for the reason that, under Wisconsin's OWI penalty scheme, the penalty for an OWI offense depends on the number of the defendant's prior OWI convictions. *See* WIS. STAT. § 346.65(2)(am) (2023-24).[1] Specifically, he argues that the three convictions are invalid because, in each of the three prior cases: he did not have legal counsel; he did not knowingly, intelligently, and voluntarily waive his right to counsel; and the court handling the case failed to find that he was competent to proceed without counsel. As a result, his argument continues, he was denied his constitutional right to counsel in each of the prior cases and, accordingly, the convictions in those cases cannot be counted as prior convictions to enhance his sentence in this case under § 346.65(2)(am).[2]

¶2    We conclude that, for each of the three prior cases, Christianson made a prima facie showing that he was denied his constitutional right to counsel. We further conclude that the State failed to meet its burden to show that Christianson nonetheless knowingly, intelligently, and voluntarily waived his right to counsel in one of the three cases and that, therefore, that conviction cannot be counted as a prior conviction to enhance his sentence. In contrast, we conclude that the State met its burden to show that Christianson knowingly, intelligently, and voluntarily waived his right to counsel in the other two cases, and that the circuit court properly found that he was competent to proceed without counsel in

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version. The 2023-24 version of the relevant statutes has not materially changed from the version of the statutes in effect in 2022 when Christianson committed the offense in this case.

[2] We refer to the court that denied Christianson's collateral challenges as the circuit court, and to the courts that accepted his pleas in the prior cases as the 1999 court, the 2000 court, and the 2001 court, respectively.

those cases. Accordingly, we affirm in part, reverse in part, and remand to the circuit court for resentencing, this time treating the OWI as a seventh offense.

## BACKGROUND

¶3     In April 2022, the State charged Christianson with OWI as an eighth offense. The criminal complaint alleged that Christianson had seven prior OWI convictions.

¶4     Christianson filed a motion collaterally challenging three of the prior OWI convictions on the basis that, in each case, he was denied the constitutional right to counsel because he was not represented by counsel; he did not knowingly, intelligently, and voluntarily waive his right to counsel; and he was not competent to proceed without counsel. The three convictions he challenged are: a 1999 conviction from Minnesota; a 2000 conviction from La Crosse County, Wisconsin; and a 2001 conviction, also from La Crosse County.

¶5     In support of his motion, Christianson filed an affidavit and documents that included the transcripts from the plea hearings and the plea questionnaires and waiver of counsel questionnaires entered in the three prior cases.

¶6     The circuit court held an evidentiary hearing on Christianson's motion, at which Christianson testified and the court admitted exhibits introduced by the parties, including Christianson's affidavit and documents noted above. We refer to this hearing as "the motion hearing," to distinguish it from the plea hearings in the 1999, 2000, and 2001 cases. We will provide additional details regarding Christianson's averments in his affidavit, his testimony at the motion hearing, and the exhibits admitted at that hearing in our analysis of each of the

prior cases. We summarize here only some aspects of Christianson's averments and testimony that are relevant to all three prior cases.

¶7     In addition to the information regarding the three prior convictions, Christianson averred the following. He graduated from high school and was in special education programming throughout his schooling. He has a learning disability that interferes with his reading comprehension, and he still has "significant difficulty" understanding written materials. "Because [he] lacked any meaningful education or experience in the Minnesota and Wisconsin legal systems, [he] do[es] not believe that [he] was competent to represent [himself] in any of these matters."

¶8     At the motion hearing, Christianson initially testified that, before the 1999 case, he had not been represented by counsel except in his divorce. The State then elicited testimony and introduced documentary evidence that Christianson was appointed a public defender in a 1990 criminal case. In that case, Christianson was initially charged with a felony but pled guilty to a misdemeanor. Christianson testified that he had forgotten about the 1990 criminal case until the State in this case brought it to his attention, and that he could not remember if the public defender in the 1990 case "was a man or a woman." He also testified that it was "fair to assume" that the public defender represented him only at the sentencing hearing in the case.

¶9     After considering the evidence and argument presented at the motion hearing, the circuit court concluded that Christianson knowingly, intelligently, and voluntarily waived his right to counsel in all three cases, and implicitly determined that Christianson was competent to proceed without counsel in all three cases.

Accordingly, the court denied Christianson's motion collaterally challenging the three prior convictions.

¶10    Christianson appeals.

## DISCUSSION

¶11    A criminal defendant's right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 7 of the Wisconsin Constitution. *State v. Klessig*, 211 Wis. 2d 194, 201-02, 564 N.W.2d 716 (1997). "The scope, extent, and, thus, interpretation of the right to the assistance of counsel is identical under the Wisconsin Constitution and the United States Constitution." *Id.* at 202-03. These constitutional provisions also guarantee a criminal defendant's right to proceed without counsel. *Id.* at 203. When a defendant seeks to proceed without counsel, "the circuit court must insure that the defendant (1) has knowingly, intelligently[,] and voluntarily waived the right to counsel, and (2) is competent to proceed pro se." *Id.* If the defendant proceeds without counsel and without meeting these two conditions, the defendant is denied the constitutional right to counsel. *Id.* at 203-04.

¶12    We first address the issue of whether Christianson knowingly, intelligently, and voluntarily waived the right to counsel in the three prior cases, and we then address the issue of whether he was competent to proceed without counsel in those cases.

## I. DENIAL OF CONSTITUTIONAL RIGHT TO COUNSEL

¶13    A defendant may collaterally challenge a prior conviction that is being used as a predicate offense for sentence enhancement under WIS. STAT. § 346.65 only on the ground that the defendant was denied the constitutional right

5

to counsel in the prior case.[3] ***State v. Hahn***, 2000 WI 118, ¶4, 238 Wis. 2d 889, 618 N.W.2d 528; ***State v. Ernst***, 2005 WI 107, ¶¶22, 25, 283 Wis. 2d 300, 699 N.W.2d 92. One way for a defendant to show that the defendant was denied the constitutional right to counsel in the prior case is to show that the defendant was not represented by counsel and did not knowingly, intelligently, and voluntarily waive the right to counsel. ***State v. Clark***, 2022 WI 21, ¶10, 401 Wis. 2d 344, 972 N.W.2d 533.

¶14 In Wisconsin, to succeed on a collateral challenge on this ground, the defendant must first make a prima facie showing that the defendant was denied the constitutional right to counsel in the prior case when the defendant proceeded to plead guilty or no contest without counsel. ***Ernst***, 283 Wis. 2d 300, ¶25. To satisfy that burden, the defendant must "point to facts that demonstrate that [the defendant] 'did not know or understand the information which should have been provided' [relevant to a decision to waive counsel] in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive [the] right to counsel." ***Id.*** (quoted source omitted).

¶15 Our supreme court has mandated that, before permitting a defendant to proceed without counsel, a circuit court must

> conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against [the defendant], and (4) was

---

[3] We use the term "collateral challenge" to describe a defendant's "'attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it.'" *See* ***State v. Ernst***, 2005 WI 107, ¶22 n.5, 283 Wis. 2d 300, 699 N.W.2d 92 (quoted source omitted) (referring to such an attempt as a "collateral attack").

> aware of the general range of penalties that could have been imposed on [the defendant].

*Klessig*, 211 Wis. 2d at 206. If the prior case was a Wisconsin case, and if a transcript of the relevant hearing at which the defendant waived the right to counsel is provided, the defendant's prima facie case can include a showing that a *Klessig* colloquy was not performed. *Clark*, 401 Wis. 2d 344, ¶¶17-18. In all Wisconsin cases in which there is a transcript of the relevant hearing, the defendant must "point to facts" showing that the defendant did not understand the information that should have been provided in the *Klessig* colloquy. *Ernst*, 283 Wis. 2d 300, ¶25; *State v. Bohlinger*, 2013 WI App 39, ¶¶19-20, 346 Wis. 2d 549, 828 N.W.2d 900, *abrogated on other grounds by Clark*, 401 Wis. 2d 344.

¶16    In order for a defendant to make a prima facie showing that the defendant was denied the constitutional right to counsel in a prior non-Wisconsin case when the defendant proceeded to plead guilty or no contest without counsel, the defendant must show that the defendant was not apprised of and did not understand the information held to be constitutionally sufficient for a valid waiver in *Iowa v. Tovar*, 541 U.S. 77 (2004). *See Ernst*, 283 Wis. 2d 300, ¶¶18-21 (explaining that the *Klessig* colloquy is "not constitutionally required" but is "a court-made procedural rule" imposed pursuant to the court's "superintending and administrative authority"); *see also State v. Baehni*, No. 2015AP2263-CR, unpublished slip op., ¶¶20-21 (WI App Apr. 27, 2017) (explaining that proper standard for evaluating out-of-state waiver of counsel is found in *Tovar*).[4] The information held sufficient to satisfy the constitutional requirement in *Tovar*

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

consists of the nature of the charges against the defendant, the defendant's right to be counseled regarding the defendant's plea, and the range of penalties that could be imposed on the defendant following entry of a guilty or no-contest plea. *Tovar*, 541 U.S. at 81.

¶17    Once the defendant makes a prima facie showing that the defendant was denied the right to counsel in a prior case, the burden shifts to the State to prove by clear and convincing evidence that, notwithstanding the deficient colloquy and the defendant's asserted lack of knowledge of the missing information, the defendant was not denied the constitutional right to counsel because the defendant's waiver of counsel was knowing, intelligent, and voluntary. *Ernst*, 283 Wis. 2d 300, ¶27. This requires that the State prove by clear and convincing evidence that the defendant knew and understood the information required by the constitution. *See Hahn*, 238 Wis. 2d 889, ¶4 (only basis of collateral challenge is violation of the "constitutional" right to counsel); *Bohlinger*, 346 Wis. 2d 549, ¶¶19-21 (explaining that the State must prove that the defendant "possessed the *constitutionally required* knowledge and understanding to execute valid waivers of counsel" (emphasis added)).

¶18    As stated, the constitutional requirement is satisfied in the plea context "when the [circuit] court informs the [defendant] of the nature of the charges against [the defendant], of [the defendant's] right to be counseled regarding [the defendant's] plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Tovar*, 541 U.S. at 81. The State may use "any evidence" to show that the defendant knew and understood this information. *See State v. Bangert*, 131 Wis. 2d 246, 274-75, 389 N.W.2d 12 (1986) (referring to whether plea was knowingly and voluntarily made). Whether the State meets its burden "will depend on a range of case-specific factors,

8

including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Tovar*, 541 U.S. at 88. If the State fails to meet its burden, the defendant's collateral challenge is successful, and the prior conviction may not be used to enhance the defendant's sentence. *See Ernst*, 283 Wis. 2d 300, ¶27. Conversely, if the State meets its burden, the defendant's collateral challenge based on the denial of the constitutional right to counsel fails.

¶19 Whether a defendant has knowingly, intelligently, and voluntarily waived the right to counsel involves the application of a constitutional standard to questions of fact. *Klessig*, 211 Wis. 2d at 204. We will uphold a circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). However, whether the circuit court's findings of fact satisfy a constitutional standard is a question of law that we review de novo. *Klessig*, 211 Wis. 2d at 204.

¶20 With these legal principles in mind, we consider the three collaterally challenged convictions in turn.

### A. The 1999 Conviction

*1. Prima Facie Showing: Additional Background and Analysis*

¶21 The information in this subsection is taken from the documents supporting Christianson's motion, specifically his averments in his affidavit and the transcript of the 1999 plea hearing.

9

¶22    On May 8, 1999, Christianson was arrested in Minnesota for driving under the influence (generally, DWI) and driving after revocation.[5]  In his affidavit filed in this case, Christianson averred as follows.  At his first court appearance following his release from jail, Christianson appeared without counsel.  Before that appearance, the prosecutor approached Christianson with a plea offer and provided Christianson with paperwork that "briefly discussed what [he] would be pleading guilty to."  Christianson "only had a moment to read this paperwork, which noted in a single sentence that [he] may have been eligible for a court appointed attorney," and, due to his learning disability, he "do[es] not believe that [he] understood what this meant at the time."  The 1999 court did not discuss with Christianson the constitutional rights that he would be waiving as part of his plea, and specifically "did not talk to [him] at any point about [his] right to an attorney."  The court nonetheless found Christianson guilty of DWI.

¶23    The transcript of the 1999 plea hearing shows that the 1999 court did not inform Christianson of his constitutional right to counsel before finding him guilty of DWI.

¶24    Christianson further averred as follows.  He was unaware in 1999 that he could request discovery, or "that an attorney could negotiate on [his] behalf for a better outcome, could cross examine the State's witnesses, present evidence in [his] defense, and argue for a more lenient sentence."  Had he known what

_____

[5] Minnesota uses the terminology "DUI" or "DWI," rather than "OWI," but this distinction is immaterial.  Pursuant to WIS. STAT. § 343.307(1)(d), "[c]onvictions under the law of another jurisdiction that prohibits a person from … using a motor vehicle while intoxicated or … with an excess or specified range of alcohol concentration" count as prior offenses under WIS. STAT. § 346.65(2).  It is undisputed that the DWI conviction in Minnesota is a conviction under a law that prohibits a person from using a motor vehicle while intoxicated or with an excess alcohol concentration.

counsel could do for him and that he would have been eligible for counsel at public expense, he "would have asked the judge to appoint a lawyer to represent" him.

¶25     We conclude that Christianson made a prima facie showing that he was denied the right to counsel, based on the transcript showing that the 1999 court did not inform Christianson of his right to have counsel advise him regarding his DWI plea, together with Christianson's averments that he would have asked for appointed counsel had he known both that he had a right to counsel who would have provided that advice and how counsel could have assisted him.  Accordingly, the burden shifted to the State.  *See* **Tovar**, 541 U.S. at 81 (requiring defendant to understand that defendant has a right to counsel); **Ernst**, 283 Wis. 2d 300, ¶27 (burden shifts to State when defendant makes prima facie showing).

### 2. *State's Burden: Additional Background and Analysis*

¶26     The information in this subsection is taken from Christianson's testimony that was implicitly credited by the circuit court and exhibits admitted at the motion hearing, including Christianson's affidavit, the transcript of the 1999 plea hearing, and forms signed by Christianson before his plea.

¶27     On May 10, 1999, two days after Christianson was arrested for DWI and driving after revocation and when he was in custody, Christianson signed a form that stated that he had the right to counsel, and specifically the right to appointed counsel if he met "the tests of indigency or poverty."  At the bottom of the form, a line instructed the defendant to "circle a response to the following question: I (will) (will not) be applying for a public defender."  Christianson did not circle either response.

¶28    Christianson testified in this case that, given the passage of time, he did not recall speaking with the prosecutor before May 24, 1999. Christianson further testified that approximately five to ten minutes before the hearing on May 24, the prosecutor approached him with a plea offer and provided him with a form titled "Petition to Plead Guilty in a D.U.I. Gross Misdemeanor or Misdemeanor Case." This form stated that Christianson had "[t]he right to be represented by an attorney, which will be appointed without cost to me if I cannot afford to pay for an attorney."

¶29    The transcript of the 1999 plea hearing shows that the prosecutor informed the 1999 court that, pursuant to discussions with Christianson, Christianson would plead guilty to the DWI charge, and the State would recommend that there be no "adjudication" of the driving after revocation charge. The court asked Christianson how he would plead to the driving after revocation charge, and Christianson said, "That I know nothing about." The court then asked if Christianson wanted to change his plea on the driving after revocation charge, and Christianson responded, "Plea of guilty." The court said, "On the [driving after revocation], the [c]ourt will stay adjudication but on the DWI, I will find you guilty and order an alcohol assessment. When that's completed, [we will] have you back for sentencing."

¶30    After the prosecutor established a factual basis for the DWI charge by questioning Christianson, the 1999 court said to Christianson, "Maybe you could meet with Court Services now and see about the [alcohol] assessment," and then said that the court would "be in recess for fifteen minutes." The transcript ends there.

¶31 Christianson testified in this case that the 1999 court did not discuss with him his right to counsel, the possibility of having counsel appointed for him, or the disadvantages of proceeding without counsel, and that he was unaware that counsel could have challenged the admissibility of evidence, obtained discovery, or argued to the court for a more lenient sentence. Christianson further testified that he would have asked for appointed counsel if he knew he had that right.

¶32 The circuit court found that the transcript from the Minnesota plea hearing is incomplete and that "there was no plea entered, from that transcript." The court concluded that, based on the forms Christianson signed, as well as his "inability to clearly remember anything back then," Christianson knowingly, intelligently, and voluntarily waived his right to counsel in the 1999 case.

¶33 We conclude that the circuit court's finding that the transcript in the 1999 case is "incomplete" is clearly erroneous. That is because there is no indication in that transcript or elsewhere in the record that the 1999 court continued the hearing or held another hearing before sentencing. The circuit court was understandably struck by the incomplete and inadequate nature of the proceeding reflected in the transcript, but we see no basis for a finding that it does not capture the entire hearing. Accordingly, we proceed based on the premise that the transcript in the 1999 case fully reflects the 1999 court's colloquy with Christianson.

¶34 As stated, a waiver of counsel at a plea hearing is knowing, intelligent, and voluntary, and, thus, the constitutional right to counsel is satisfied, when the circuit court informs the defendant of the defendant's "right to be

counseled regarding [the defendant's] plea."[6]  *Tovar*, 541 U.S. at 81.  The evidence presented at the motion hearing in this case shows that the 1999 court did not inform Christianson of his right to be counseled regarding his plea to the DWI charge.  In fact, the transcript shows that the court did not ask for or receive Christianson's plea to the DWI charge before "accepting" what the court treated as his plea to the DWI charge.  We acknowledge that the State provided evidence that Christianson signed two forms that informed him of his right to counsel, and also that the circuit court at the motion hearing found Christianson's testimony that he "probably" did not understand those forms "suspect."  However, we conclude that the State did not meet its burden to show by clear and convincing evidence either that Christianson "'kn[e]w[] what he [was] doing'" when the court accepted a plea on the 1999 DWI charge, or that Christianson was informed of his right to counsel as to that charge, when Christianson was not represented by counsel and did not actually enter a plea to that charge.  *See id.* at 81, 88 (quoted source omitted) (for a defendant to knowingly, intelligently, and voluntarily waive counsel at a plea hearing, the defendant must "'know[] what [the defendant] is doing'" in proceeding to enter a plea without counsel).  The State failed to provide evidence that Christianson even understood that he was waiving counsel and pleading to the DWI charge.

---

[6] As stated above, the plea-taking court must also inform the defendant of the nature of the charges the defendant faces, as well as "the range of allowable punishments attendant upon the entry of a guilty plea." *Iowa v. Tovar*, 541 U.S. 77, 81 (2004).  Christianson did not argue in the circuit court, nor does he argue on appeal, that he was not aware of either of these things in the 1999 case.  Because our conclusion that Christianson was not informed of his right to be counseled regarding his plea is dispositive, we do not consider these other requirements.  *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶35 The State does not present an argument on this issue that we have not already addressed. It argues that the transcript Christianson provided "is *not* for the hearing at which Christianson entered his plea to the [DWI] charge, but for a prior hearing, so the burden did not shift to the State." We have explained why we reject this argument as unsupported by the record.

### B. The 2000 Conviction

#### 1. *Prima Facie Showing: Additional Background and Analysis*

¶36 The information in this subsection is taken from Christianson's averments in his affidavit in this case and the transcript of the 2000 plea hearing, which Christianson filed in support of his collateral challenge.

¶37 On June 3, 2000, Christianson was arrested in La Crosse County for OWI as a third offense. Christianson appeared without counsel before the 2000 court on July 27, 2000. In his affidavit filed in this case, he averred as follows. In the 2000 case, he "continued to be unaware of what a lawyer could do for [him] in a criminal case," such as negotiate with the prosecution, cross-examine the State's witnesses, and argue for a more lenient sentence, "or that [he] would be eligible for an attorney at public expense." Before the hearing in the 2000 case, the prosecutor provided Christianson with a waiver of counsel questionnaire, and Christianson "signed it in the few minutes between meeting with [the prosecutor] and having [his] case called in court." The court did not perform a ***Klessig*** colloquy; specifically, the court "did not … discuss the dangers of representing [himself] without an attorney or the benefits of having a lawyer." Had the court discussed those dangers and benefits, Christianson "would have asked [the court] to appoint a lawyer to represent" him.

¶38     The transcript of the 2000 plea hearing shows that the 2000 court did not conduct a *Klessig* colloquy; specifically, the court did not inform Christianson of the disadvantages of proceeding without counsel.

¶39     Based on this transcript and Christianson's averment that he was unaware of the disadvantages of proceeding without counsel, we conclude that he made a prima facie showing that he was denied the right to counsel in the 2000 case.  Accordingly, the burden shifted to the State.  *See Ernst*, 283 Wis. 2d 300, ¶27.

### 2. *State's Burden: Additional Background and Analysis*

¶40     The information in this subsection is taken from Christianson's testimony at the motion hearing that was implicitly credited by the circuit court unless otherwise noted, and exhibits admitted at the motion hearing, specifically the transcript of the 2000 plea hearing and the signed plea questionnaire and the signed waiver of counsel questionnaire in the 2000 case.

¶41     Christianson testified in this case that he did not speak with an attorney, other than the prosecutor, before entering a plea in the 2000 case.  Before the plea hearing, Christianson signed a plea questionnaire and a waiver of counsel questionnaire.

¶42     The plea questionnaire that Christianson signed before the plea hearing stated that Christianson understood that by entering a guilty plea, he was giving up the following constitutional rights: to a trial, to remain silent, to testify and present evidence at trial, to subpoena witnesses for trial, to a jury trial requiring unanimity, to cross-examine witnesses, and to make the State prove him guilty beyond a reasonable doubt.

¶43    The waiver of counsel questionnaire that Christianson signed before the plea hearing stated that Christianson wished to waive his right to counsel, and that:

> I understand and I wish to give up my constitutional right to counsel, under the Sixth Amendment to the United States Constitution, and Article I, Section 7, of the Wisconsin Constitution, throughout all stages of the proceedings that follow the filing of the criminal charge….
>
> I understand that I have the right to hire my own attorney….
>
> I understand that if I do not have enough money to hire my own attorney, then I may talk to a public defender and I may be entitled to have an attorney appointed to represent me at no cost….
>
> ….
>
> I understand that if I were to be represented by an attorney, that he/she may discover information or facts which may be helpful in my defense….
>
> I understand that an attorney may find that I have a defense to the charge or that there are facts which may result in a lighter penalty….
>
> I understand that an attorney may be of help to me.

The questionnaire concluded by stating:

> I have read (or have had read to me) this entire questionnaire and I understand its contents. I hereby state that I am competent to waive counsel, I understand the charge against me and that an attorney may be of assistance, I understand that an attorney may be appointed to represent me if I am indigent, and I voluntarily and freely waive my right to be represented by counsel.

¶44    The transcript of the 2000 plea hearing shows that the 2000 court informed Christianson of the penalties, including fines and costs, jail time, license revocation, and other consequences, that would be imposed if he pled guilty. The

17

court explained the elements of OWI as a third offense, including the need for the State to prove the prior convictions necessary for sentence enhancement, and Christianson said that he understood. The court asked if Christianson had read through the plea questionnaire before signing it, and if Christianson understood all of the constitutional rights he would waive by pleading guilty. Christianson answered yes to both questions. The court asked Christianson if he had any questions about the rights he was waiving, and Christianson said no.

¶45     The 2000 court also referred to Christianson's signing of the waiver of counsel questionnaire, and asked: "Do you understand [that] by doing so you are giving up your right to have an attorney present, and [that] I would either give you time to hire your own attorney if you wanted to or see that one's appointed for you if you're indigent?" Christianson responded that he understood. The court determined that Christianson's plea was knowingly, intelligently, and voluntarily entered and accepted his guilty plea. Christianson then asked the court several questions about work release, reporting for jail time, and return of bond, which the court answered.

¶46     Christianson testified in this case that the 2000 court did not talk to him about the dangers of proceeding without counsel or the benefits of having counsel, and that if he had been aware of these things, as well as that he could have had counsel appointed "at low or no cost," then he would have "accepted an offer to have a lawyer appointed for [him]." The circuit court did not credit Christianson's testimony that he was not aware of these things.

¶47     The circuit court found that Christianson understood the forms that he signed. The court specifically said that Christianson's testimony that he did not understand them because of a learning disability was "disingenuous." The court

18

then concluded that, based on the forms signed, the 2000 court's colloquy at the plea hearing, and Christianson's experience with the legal system, Christianson knowingly, intelligently, and voluntarily waived his right to counsel in the 2000 case.

¶48 As stated, to prove by clear and convincing evidence that Christianson knowingly, intelligently, and voluntarily waived his right to counsel, the State must show that the circuit court informed Christianson of "the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *See Tovar*, 541 U.S. at 81.

¶49 To the extent that Christianson asserts on appeal that he was unaware of the nature of the charges or the range of punishments he faced, he did not aver or testify to that effect in the circuit court, and any such testimony would have been directly contradicted by the transcript of the 2000 plea hearing. That transcript reflects that the 2000 court directly informed Christianson of the elements of OWI as a third offense and the penalties Christianson would face upon entry of a guilty or no-contest plea.

¶50 As we now explain, the record also establishes that, contrary to what Christianson did argue in the circuit court and reiterates on appeal, Christianson was informed of and understood his right to be counseled regarding his plea. The transcript of the plea hearing in the 2000 case shows that the 2000 court asked Christianson if he understood that by signing the waiver of counsel questionnaire, he was giving up his right to have an attorney present, and that the court would either give him time to hire an attorney or see that one was appointed for him if he was indigent. Christianson said that he understood.

¶51 Moreover, the waiver of counsel questionnaire that Christianson signed, and which he told the 2000 court that he understood, stated that he understood that he had a right to counsel, did not wish to be represented by counsel, and wished to give up his constitutional right to counsel. It also stated that he understood that he may be entitled to a public defender at no cost if he did not have enough money to hire an attorney. While Christianson did not fill in the maximum penalty on that form, that information was provided by the court at the plea hearing, and Christianson completed the remainder of the questionnaire, and signed and dated it below a statement affirming that he had read the "entire questionnaire and … underst[oo]d its contents" and that he was "competent to waive counsel" and "voluntarily and freely" waived his right to counsel.

¶52 Further, although Christianson testified at the motion hearing in this case that he did "not totally" understand the information in the waiver of counsel questionnaire in the 2000 case, we accept as not clearly erroneous the circuit court's finding that Christianson understood the information contained in the waiver of counsel questionnaire, based in part on Christianson's statement to the 2000 court that he understood that he was giving up his right to be counseled about his plea. *See State v. Owens*, 148 Wis. 2d 922, 929-30, 436 N.W.2d 869 (1989) (this court defers to the circuit court's credibility determinations); *State v. Hoppe*, 2009 WI 41, ¶42, 317 Wis. 2d 161, 765 N.W.2d 794 (use of a plea questionnaire form can be considered in determining whether a defendant validly waived constitutional rights, but the record must show an understanding by the defendant, based on a colloquy with the circuit court, of the implications of signing the form).

¶53 In sum, the State showed that: the 2000 court specifically informed Christianson of his right to counsel; Christianson understood and signed the

20

waiver of counsel questionnaire indicating that he had a right to counsel and deliberately and voluntarily chose to waive that right; and the 2000 court informed Christianson of the nature of the charge against him and the attendant penalties should he plead guilty or no contest. Based on this showing, we conclude that the State met its burden to show by clear and convincing evidence that Christianson knowingly, intelligently, and voluntarily waived his right to counsel in the 2000 case. *See Tovar*, 541 U.S. at 81 (explaining that the constitutional requirement is satisfied when the defendant is informed "of the nature of the charges …, of [the defendant's] right to be counseled regarding [the defendant's] plea, and of the range of allowable punishments attendant upon the entry of a guilty plea").[7]

¶54 Christianson argues that the State did not present sufficient evidence to show that Christianson had the requisite understanding of each of the *Klessig* factors. However, the State's burden was to prove only that Christianson understood what is sufficient to show a knowing, intelligent, and voluntary waiver under the constitution: the nature of the charge against him, his right to be counseled regarding his plea, and the range of punishments attendant upon his guilty plea. *See Tovar*, 541 U.S. at 81. As explained above, the State did so.

---

[7] We pause to note that the *Tovar* court states that the Constitution does not require that the defendant be informed of the benefits of having counsel or the disadvantages of proceeding without counsel. *Tovar*, 541 U.S. at 91-92. However, *Tovar* also states that a waiver of counsel is "intelligent when the defendant 'knows what [the defendant] is doing.'" *Id.* at 88 (quoted source omitted). And, *Tovar* further states that the information a defendant must possess to make a knowing, intelligent, and voluntary waiver of counsel "will 'depend, in each case, upon the particular facts and circumstances surrounding that case.'" *Id.* at 92 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Factors that can change case to case, for example, will include the extent of the defendant's past experiences with and familiarity with the criminal justice system, as well as the complexity of the charge or charges. In any event, in this case, the signed waiver of counsel questionnaire informed Christianson of the benefits of counsel and the disadvantages of proceeding without counsel, and the circuit court's finding that he was aware of that information is not clearly erroneous.

¶55    Christianson also argues that the circuit court improperly shifted the burden of proof back to him. Because we review de novo whether Christianson's waiver of counsel was constitutionally valid, we do not consider this argument.

### C. The 2001 Conviction

*1. Prima Facie Showing: Additional Background and Analysis*

¶56    The information in this subsection is taken from Christianson's averments in his affidavit in this case and the transcript of the 2001 plea hearing, which Christianson filed in support of his collateral challenge.

¶57    On January 13, 2001, Christianson was arrested in La Crosse County and charged with OWI as a fourth offense. Christianson appeared without counsel before the 2001 court on March 15, 2001. In his affidavit filed in this case, he averred as follows. At the time of the March 2001 hearing, he "was unaware of the advantages to having an attorney and the disadvantages of self-representation." Before the hearing, the prosecutor approached Christianson with a plea offer and provided him with a waiver of counsel questionnaire and a plea questionnaire, which Christianson "did not have very much time before court to review." Christianson did not know what to do with the plea questionnaire and, accordingly, did not fill in several of the blanks and did not sign the form. The court did not discuss the dangers of proceeding without counsel, the benefits of counsel, or that Christianson might be eligible for counsel at public expense. Had the court discussed these things with him, Christianson would have asked the court to appoint counsel to represent him.

¶58     The transcript of the 2001 plea hearing shows that the 2001 court did not conduct a *Klessig* colloquy; specifically, the court did not inform Christianson of the disadvantages of proceeding without counsel.

¶59     Based on this transcript and Christianson's averment that he was still "unaware of the … disadvantages of self-representation," we conclude that Christianson made a prima facie showing that he was denied the right to counsel in the 2001 case.  Accordingly, we consider whether the State showed by clear and convincing evidence that Christianson's waiver of counsel was knowing, intelligent, and voluntary.  *See Ernst*, 283 Wis. 2d 300, ¶27.

### 2. State's Burden: Additional Background and Analysis

¶60     The information in this subsection is taken from Christianson's testimony that was credited by the circuit court unless otherwise noted, and exhibits admitted at the motion hearing, specifically Christianson's affidavit, the transcript of the 2001 plea hearing, the unsigned plea questionnaire, and the signed waiver of counsel questionnaire.

¶61     On March 15, 2001, before the plea hearing on the charge of OWI as a fourth offense, the prosecutor provided Christianson with a plea questionnaire, which Christianson partially filled out but did not sign.  Christianson testified in this case that he was unsure of what to write on the plea questionnaire and did not realize that he was supposed to sign it.  Christianson also received a waiver of counsel questionnaire and signed it.   The waiver of counsel questionnaire contained the same information as the questionnaire Christianson signed in the 2000 case, including that Christianson had the right to counsel.  Christianson testified in this case that, in 2001, his "trouble comprehending written documents" had not "become any easier."

¶62    The transcript of the 2001 plea hearing shows that the 2001 court informed Christianson of the range of penalties for OWI as a fourth offense and that the fines would be doubled because of his blood alcohol content. Christianson said that he understood and still wished to plead guilty. The court asked Christianson if he understood the three elements the State must prove beyond a reasonable doubt, including the prior convictions required to enhance the sentence, and Christianson responded that he did. The court then asked Christianson if he read the plea questionnaire, because he did not sign it, and asked Christianson whether he understood it. Christianson answered yes to both questions. Christianson also affirmed that he understood that he was waiving the rights as set forth in the plea questionnaire and the waiver of counsel questionnaire. The 2001 court said on the record that it found that Christianson "fully underst[ood] the elements of the offense, the penalties involved, the constitutional rights he's giving up; [and] knowingly, voluntarily, and intelligently waives those rights." The court accepted Christianson's guilty plea.

¶63    Christianson testified in this case to the following, which the circuit court did not fully credit, as explained below. He did not entirely understand his right to have counsel appointed for him "at public expense," and he would have asked for a public defender if he had understood that right. He never received discovery from the State and did not know that he was able to request it. Further, he did not know that counsel could challenge the use of evidence, negotiate with the prosecutor on his behalf, or argue to the court for a lesser sentence. Christianson did not know that the public defender's office might have funded a private investigator or expert witness if the circumstances called for it. If counsel had advised him that exercising the above rights could have helped him get a better resolution, he would have followed that advice.

¶64     As with the 2000 case, to the extent that Christianson asserts on appeal that he was unaware of the nature of the charges or the range of punishments he faced, he did not aver or testify in the circuit court to that effect. Further, such testimony would have been directly contradicted by the transcript of the 2001 plea hearing, which shows that the 2001 court directly informed Christianson of the elements of OWI as a fourth offense and the range of punishments Christianson would face upon entry of a guilty or no-contest plea.

¶65     As to whether Christianson was informed of and understood his right to be counseled regarding his plea, as in the 2000 case, Christianson signed the waiver of counsel questionnaire, affirming that he understood that he had a constitutional right to counsel and wished to give up his right to counsel. While Christianson again did not fill in the maximum penalty, he completed the remainder of the form and signed and dated it below an affirmation that he had read the "entire questionnaire and … underst[oo]d its contents" and that he "voluntarily and freely" waived his right to counsel. When the 2001 court asked whether Christianson understood the rights set forth in that questionnaire, he said that he did. We conclude that the circuit court's findings that Christianson did in fact understand the right to counsel set forth in that questionnaire, and that his testimony to the contrary was "disingenuous," are not clearly erroneous. *See Owens*, 148 Wis. 2d at 929-30 (this court defers to the circuit court's credibility determinations).

¶66     In sum, the State showed that: Christianson read, understood, and signed the waiver of counsel questionnaire indicating that he understood that he had a right to counsel and deliberately and voluntarily chose to waive that right; and Christianson told the circuit court that he had no questions regarding waiving his right to counsel. Based on these showings, as well as the fact that Christianson

25

was informed of his right to counsel by the 2000 court only eight months before the 2001 plea hearing, we conclude that the State met its burden to show by clear and convincing evidence that Christianson was informed of his right to be counseled regarding his plea and, therefore, knowingly, intelligently, and voluntarily waived his right to counsel in the 2001 case. *See Tovar*, 541 U.S. at 81 (defendant's waiver of the right to counsel is constitutionally valid if the defendant is informed of "the nature of the charges …, of [the defendant's] right to be counseled …, and of the range of allowable punishments").[8]

¶67    Christianson argues that the State did not present sufficient evidence to show that Christianson had the requisite understanding of each of the *Klessig* factors.  For the reasons stated above, we conclude that this misstates the State's burden.

¶68    Christianson also argues that the circuit court improperly shifted the burden of proof back to him.  Again here, because our review is de novo, we do not consider this argument.

## II.  COMPETENCY

¶69    When a criminal defendant seeks to proceed without counsel, the presiding court must determine on the record whether the defendant is competent to proceed without counsel. *Klessig*, 211 Wis. 2d at 203.  If the court fails to do

---

[8] As with the challenge to the 2000 conviction, here again, the circuit court's finding that, when Christianson entered his plea in the 2001 case, he was aware of the benefits of counsel and the disadvantages of proceeding without counsel, is not clearly erroneous.

Separately, as previously stated, Christianson did not aver or testify that he was unaware of the nature of the charges or range of allowable punishments, and the transcript shows that the 2001 court informed him of both.

so, the circuit court reviewing a collateral challenge may determine whether the defendant was competent to proceed without counsel in the prior case. *Id.* at 213. If the circuit court determines that a meaningful inquiry into the defendant's competency can be conducted, it must hold an evidentiary hearing. *Id.* If, instead, the record is "so clear that an evidentiary hearing is not necessary," the circuit court may determine the defendant's competency without conducting a hearing. *Id.* at 214 n.9.

¶70    "[T]he competency determination should not prevent persons of average ability and intelligence from representing themselves unless 'a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.'" *Id.* at 212 (quoted source omitted). In addition, "this determination must rest to a large extent upon the judgment and experience of the [circuit court]." *Id.* The court may consider factors such as "the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect [the defendant's] ability to communicate a possible defense to the jury." *Pickens v. State*, 96 Wis. 2d 549, 569, 292 N.W.2d 601 (1980), *overruled on other grounds by Klessig*, 211 Wis. 2d 194. A circuit court's "determination that the defendant is or is not competent to [self-]represent … will be upheld unless totally unsupported by the facts apparent in the record." *Pickens*, 96 Wis. 2d at 570.

¶71    Here, Christianson does not make an argument that the circuit court erred in determining that he was competent to proceed without counsel in the prior cases, separate from his arguments about whether he knowingly, intelligently, and voluntarily waived his right to counsel in those cases. Instead, he argues that the 1999, 2000, and 2001 courts in the three prior cases failed to find that Christianson was competent to proceed without counsel. Accordingly, we could reject his

challenge regarding competency as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (explaining that we need not address undeveloped arguments). However, for the sake of completeness, we now explain why he does not show that the circuit court's implicit determination here, that he was competent in each of the prior cases, is "totally unsupported by the facts apparent in the record." *See Pickens*, 96 Wis. 2d at 570.

¶72 The transcripts admitted at the motion hearing in this case show that the 1999, 2000, and 2001 courts each failed to determine Christianson's competency on the record. To recap, in his affidavit submitted in this case, Christianson averred that he graduated from high school and was in special education programming throughout his schooling. He averred that he has a learning disability that interferes with his reading comprehension and that he still has "significant difficulty" understanding written materials. Christianson further averred that, "[b]ecause [he] lacked any meaningful education or experience in the Minnesota and Wisconsin legal systems, [he] do[es] not believe that [he] was competent to represent [himself] in any of these matters."

¶73 At the motion hearing, the circuit court found that none of the documents Christianson completed or signed in the three prior cases showed "any issues with his competence to proceed." The court also found that Christianson never brought up any issues with his competency in the three prior cases, that Christianson "had plenty of experiences with the court," and that his attempt to assert at the motion hearing that he was not competent was "disingenuous." The court found that Christianson's averments and testimony regarding his learning disability were "somewhat suspect" based on the lack of any other evidence, whether from employers, schools, or doctors, as to this disability.

¶74 In addition, Christianson failed to identify "'a specific problem or disability … which may prevent a meaningful defense from being offered, should one exist,'" *see* **Klessig**, 211 Wis. 2d at 212 (quoted source omitted), or an issue "which may significantly affect his ability to communicate a possible defense to the jury," *see* **Pickens**, 96 Wis. 2d at 569.

¶75 In sum on this issue, Christianson fails to show that the circuit court's implicit determination that Christianson was competent to proceed without counsel in each of the three prior cases has no factual support in the record.

## CONCLUSION

¶76 For the reasons stated above, we conclude that Christianson successfully collaterally challenged his 1999 conviction for DWI in Minnesota. We also conclude that the State showed that Christianson knowingly, intelligently, and voluntarily waived his constitutional right to counsel in the 2000 and 2001 Wisconsin OWI cases, and that the circuit court did not err in determining that Christianson was competent to proceed without counsel in each of those two cases. Accordingly, we affirm in part, reverse in part, and remand to the circuit court for resentencing, this time treating the OWI as a seventh offense.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

Recommended for publication in the official reports.